**Howard Earl ROQUEMORE, Jr., Appellant,**

v.

**The STATE of Texas.**

**No. 722–00.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 14, 2001.

Womack, J. and Holcomb, J., concurred and filed separate opinions.

Keller, P.J., dissented and filed opinion in which Keasler and Hervey, J.J., joined.

---

Henry L. Burkholder, III, Houston, for Appellant.

Alan Curry, Asst. DA, Houston, for State.

## OPINION

PRICE, J., delivered the opinion of the Court in which MEYERS, JOHNSON, HOLCOMB, and COCHRAN, J.J., joined and in Part II–A of which WOMACK, J., joined.

Family Code section 52.02(a) requires that once an officer takes a juvenile into custody, the officer must do one of six enumerated acts without unnecessary delay and without first taking the juvenile to any place other than a juvenile processing office. Article 38.23 of the Code of Criminal Procedure requires the suppression of evidence if section 52.02(a) is not followed. The officers in this case obtained a confession and recovered stolen property after taking the appellant into custody but before taking him to a juvenile processing office. We must determine whether the trial court erred in admitting testimony regarding the oral statements and testimony concerning the recovery of stolen property. We hold that because the appellant's oral statements were not the result of custodial interrogation and were made en route to a juvenile processing office, the trial court properly admitted testimony regarding the oral statements. We also hold that, because the appellant was not first taken to a juvenile processing office before the stolen property was recovered, section 52.02(a)[1] was not followed and the trial court erred in admitting evidence concerning the recovery of the stolen property. Accordingly, we reverse the judgment of the Court of Appeals and remand the case for a harm analysis.

### I. FACTS

This case arises from two armed robberies in Houston. At a motion to suppress hearing, Officer Garcia testified that he and Officer Heimann went to the appel-

---

1. All references to sections 52.02(a) and 51.09(d)(2) refer to the Texas Family Code as of the time the appellant was taken into custody in 1993, unless otherwise indicated.

lant's grandparent's home to take the appellant into custody for armed robbery. Garcia explained that the appellant's uncle brought the appellant out from a back room and that the uncle told the appellant that he needed to cover himself because people were pointing the finger at him. Garcia told the appellant that he was under arrest for a gas station robbery, placed the appellant in the police car, and proceeded to read the appellant his *Miranda* warnings.

Garcia testified that the appellant said that he wanted to cooperate with the police. Garcia further testified that the appellant admitted that he and two other men had robbed a woman at a gas station and offered to take the officers to the stolen property. Garcia explained that the appellant led them to a nearby house, where the officers recovered some pictures and a credit card receipt that bore the name of a robbery victim. Garcia stated that, after they recovered the property, the officers took the appellant to the juvenile division. In answer to the State's question on cross-examination, Garcia estimated that, from the time they took the appellant into custody to the time they recovered the property, between 20 and 25 minutes had elapsed.

At the hearing, the appellant argued that testimony concerning his oral statements and the recovery of the stolen property should be suppressed because he was not taken without unnecessary delay and was not taken first to a juvenile processing office, in violation of Family Code section 52.02(a). The trial court denied the mo-tion to suppress without issuing written findings of fact or explaining its rationale. Garcia testified before the jury regarding both the appellant's oral statements and the recovery of the stolen property.

The appellant raised the same arguments on direct appeal. The Court of Appeals affirmed the conviction, *Roquemore v. State*, 11 S.W.3d 395, 400–01 (Tex. App.—Houston [1st Dist.] 2000) (op. on reh'g), holding that the confession and the offer to take the officers to the stolen property were voluntary statements and not the result of custodial interrogation. Because *Comer v. State*, 776 S.W.2d 191 (Tex.Crim.App.1989), interpreted section 52.02(a) to require both custody and interrogation, the Court of Appeals concluded that section 52.02(a) did not operate to exclude the officer's testimony concerning the appellant's statements. *Roquemore*, 11 S.W.3d at 399–400. The Court of Appeals also held that, even if section 52.02(a) was not followed, testimony about the recovery of stolen property was properly admitted. *Id.* at 400. The Court of Appeals limited *Comer* to its facts and held that, because there was no evidence of improper impact by the police officers and because there was no unnecessary delay, exclusion was unwarranted. *Id.*

We granted review to determine whether testimony describing the appellant's oral statements and testimony concerning the recovery of the stolen property[2] should have been suppressed under section 52.02(a).[3]

2. The recovered property was never offered at trial. Only the testimony of Officer Garcia describing the recovered property was presented to the jury.

3. The exact ground on which we granted review was: "The trial court committed reversible error in failing to suppress appellant's oral in-custody statements made to Officer Garcia, where the appellant was a child, was questioned immediately upon being taken into custody, and where appellant was not first taken to a juvenile processing office as required by law."

## II. DISCUSSION

In reviewing a motion to suppress, we give great deference to a trial court's determination of historical facts. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Mixed questions of law and fact that turn on the credibility and demeanor of a witness are reviewed under the almost-total-deference standard, and mixed questions of law and fact that do not turn on the credibility and demeanor of a witness are reviewed *de novo.* *Id.* Also, we examine the evidence in the light most favorable to the trial court's ruling. *State v. Ballard,* 987 S.W.2d 889, 891 (Tex. Crim.App.1999). When the trial court does not file findings of fact, we assume that the trial court made implicit findings that support its ruling, so long as those implied findings are supported by the record. *State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App.2000). If the decision is correct under any theory of law applicable to the case, the ruling will be sustained. *Id.* at 855–56.

Because the appellant was a juvenile at the time of his arrest, the provisions of the Family Code control issues involving the appellant's substantive rights. *See Comer,* 776 S.W.2d at 196 (holding that issues involving the substantive rights of pre-transfer juveniles are governed by the Family Code). Section 52.02(a), at the time of the appellant's arrest, read in relevant part: "A person taking a child into custody, without unnecessary delay and without first taking the child to any place other than a juvenile processing office des-

ignated under Section 52.025 of this code, shall do one of the following [enumerated acts]."[4] Act of May 26, 1991, 72d Leg., R.S., ch. 495, § 1, 1991 Tex. Gen. Laws 1738, 1738–39 (amended 1999) (current version at Tex. Fam.Code § 52.02(a) (Vernon Supp.2001)).[5] Former Family Code section 51.09(d)(2) read, "This section does not preclude the admission of a statement made by the child if: ... the statement does not stem from custodial interrogation." Act of May 27, 1991, 72d Leg., R.S., ch. 593, § 1, 1991 Tex. Gen. Laws 2129, 2130 (amended 1999) (current version at Tex. Fam.Code § 51.095(b)(1) (Vernon Supp.2001)).[6]

The appellant argues that because he was not taken first to a juvenile processing office before making statements to Garcia and before recovering the stolen property, the trial court erred by not suppressing Garcia's testimony. The appellant relies on our decision in *Comer* for the proposition that the Family Code's provisions should be strictly followed.

In *Comer,* we reviewed the question: whether a written statement by a juvenile should be suppressed when section 52.02(a) had not been followed but the statement appeared to be admissible under section 51.09(b)(1). The facts were that three hours had elapsed from the time Comer was taken into custody until he was transported to a juvenile detention center. In the interval, Comer was taken to a justice of the peace where he received the appropriate Family Code admonishments.

---

**4.** Taking the child to the crime scene or the location of stolen property is not one of the options listed. *See* Tex. Fam.Code § 52.02(a).

**5.** The statute has been amended so that an officer may bring a child to a secure detention facility as provided by section 51.12(j). Tex. Fam.Code § 52.02(a)(4). Also, the legislature added subsections (c) and (d), which deal with blood and breath specimens under Chap-

ter 724 of the Texas Transportation Code. Tex. Fam.Code § 52.02(c), (d).

**6.** The current version of section 51.09 deals with the waiver of a juvenile's rights. Tex. Fam.Code § 51.09. Section 51.095 deals with the admissibility of a juvenile's statements. Tex. Fam.Code § 51.095.

Comer made a full confession in writing before the justice of the peace.

We held that the three-hour time-period was an unnecessary delay and that the written statement was inadmissible, notwithstanding section 51.09(b)(1). *See Comer,* 776 S.W.2d at 196. We noted that Title Three of the Family Code contained competing interests: to protect "the public from the unlawful acts of children while concomitantly insulating those children from the stigma of criminality and providing for their welfare and edification." *Id.* at 193. In the same vein, there is tension between section 52.02(a) and section 51.09(b)(1).[7] We resolved the tension by requiring that the provisions of section 52.02(a) be followed before interrogation under section 51.09(b)(1) is permitted. "Where the officer deems it necessary to take the child into custody, section 52.02(a) ... dictates what he must then do 'without unnecessary delay and without first taking the child anywhere else.'" *Id.* at 194. We reasoned that "Title 3 contemplates that once he has found cause to initially take the child into custody and makes the decision to refer him to the intake officer ... a law enforcement officer relinquishes ultimate control over the investigative function of the case." *Id.* at 196. In other words, it was the legislature's intent that "the officer designated by the juvenile court make the initial decision whether to subject a child to custodial interrogation." *Id.* Because section 52.02(a)'s provisions were not followed, and the taint of illegality had not dissipated, we found a violation of article 38.23 of the Code of Criminal Procedure and remanded for a harm analysis. *See id.* at 196–97.

In *Baptist Vie Le,* we reviewed the question: whether a police officer complied with section 52.02(a) when he took the juvenile to a magistrate and then directly to the homicide division. 993 S.W.2d 650, 655 (Tex.Crim.App.1999). The facts were that the juvenile was taken into custody and then taken to a magistrate. Baptist Vie Le was then transported to the Houston Police Department where he gave a written statement.

We held that the statement should have been suppressed because nothing in the record indicated that the Houston Police Department was an office designated by the juvenile court under section 52.02(a). *See id.* at 654–55. We emphasized that the language of section 52.02(a) was both clear and mandatory. *See id.* at 655. "The Legislature has set forth very specific actions which a law enforcement officer must take when arresting a juvenile.... [W]e must not ignore the Legislature's mandatory provisions regarding the arrest of juveniles." *Id.* We reaffirmed our decision in *Comer* and noted that the legislature intended police involvement to be restricted to the initial seizure and prompt release or commitment of the juvenile. *Id.* (quoting *Comer,* 776 S.W.2d at 194–95). Because the evidence was obtained in violation of section 52.02(a), we held it was error not to suppress the confession and remanded for a harm analysis. *See id.* at 655–56 ("[The officer] was required to do one of the five options listed in section 52.02(a) 'without unnecessary delay.' Taking [Baptist Vie] Le to the homicide division did not constitute one of these five options.").

7. At the time of Comer's offense, section 51.09(b)(1) read in relevant part that a written statement by a child "is admissible in evidence in any future proceeding concerning the matter about which the statement was given if ... the child is in a detention facility or other place of confinement or in the custody of an officer...." Act of May 19, 1975, 63th Leg., R.S., ch. 693, § 9, 1975 Tex. Gen. Laws 2152, 2154 (amended 1999) (current version at Tex. Fam.Code § 51.095(a)(1) (Vernon Supp.2001)); *Comer,* 776 S.W.2d at 195.

In *Comer* and *Baptist Vie Le*, it is clear that this Court established a policy of strict compliance with the Family Code provisions, especially section 52.02(a). We will adhere to *Comer* and *Baptist Vie Le* and continue to require strict compliance with the Family Code. *See Baptist Vie Le*, 993 S.W.2d at 655–56; *Comer*, 776 S.W.2d at 196–97.

### A. Oral Statements

In applying the above principles, we cannot agree with the appellant's argument that the oral statements should have been suppressed because section 52.02(a) was not followed.

 Under section 51.09(d)(2), if a statement does not stem from a custodial interrogation, the statement is admissible. *See* Act of May 27, 1991, 72d Leg., R.S., ch.593 § 1, 1991 Tex. Gen. Laws 2129, 2130 (amended 1999) (current version at TEX. FAM.CODE § 51.095(b)(1)); *cf.* TEX. CRIM. PROC.CODE art. 38.22 § 5 (allowing admission of statements that do not stem from custodial interrogation); *Jones v. State*, 795 S.W.2d 171, 176 (Tex.Crim.App. 1990) (holding that voluntary statements that do not arise from custodial interrogations do not violate the Fifth Amendment). A custodial interrogation occurs when a defendant is in custody and is exposed "to any words or actions on the part of the police ... that [the police] should know are reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *Jones*, 795 S.W.2d at 174. Words or actions by the police that normally attend an arrest and custody, such as informing a defendant of his *Miranda* rights, do not constitute a custodial interrogation. *See Innis*, 446 U.S. at 300, 100 S.Ct. 1682; *Jones*, 795 S.W.2d at 174,

176. A statement by a juvenile that is otherwise admissible under section 51.09 may be found to be inadmissible if the requirements of section 52.02(a) are not followed. *See Comer*, 776 S.W.2d at 195–96 (holding a juvenile's statement inadmissible for violations of section 52.02(a) notwithstanding the fact that the statement was otherwise admissible under section 51.09(b)).

 According to Garcia's testimony at the motion to suppress hearing, Garcia placed the appellant into the squad car, told the appellant that he was under arrest, and read him *Miranda* warnings. After hearing his *Miranda* warnings, the appellant said that he wanted to cooperate and then made the oral statements.[8] The appellant made the statements moments after he was placed in the car and had received his *Miranda* warnings. The oral statements were not the result of any questions or conduct by Garcia. Furthermore, there is no indication of any delay between the time Garcia took the appellant into custody and the time the statements were made. The testimony indicates that the appellant made the statements spontaneously and voluntarily while en route to the juvenile division.

Based on Garcia's testimony, the trial court was free to conclude that the appellant made the oral statements while being transported to a juvenile office without unnecessary delay. *See* TEX. FAM.CODE § 52.02(a); *Ross*, 32 S.W.3d at 855. The record supports the theory that the statements were freely made and were not the result of custodial interrogation. *See* Act of May 27, 1991, 72d Leg., R.S., ch.593 § 1, 1991 Tex. Gen. Laws 2129, 2130 (amended 1999) (current version at TEX. FAM.CODE § 51.095(b)(1)); *Innis*, 446 U.S. at 300, 301, 100 S.Ct. 1682; *Ross*, 32 S.W.3d at

---

8. The appellant then said that he could take

the officers to the stolen property's location.

855–56. We hold that the trial court properly refused to suppress the testimony regarding the defendant's oral statements.

## B. Recovery of Stolen Property

█ Although the testimony regarding the oral statements was properly admitted, the testimony concerning the recovery of the stolen property was allowed before the jury in violation of the Family Code. The State argues that section 52.02(a) requires neither that an officer immediately do one of the six enumerated acts nor that a juvenile be taken immediately to a juvenile processing office; rather, the statute only requires that the officer do one of these options without unnecessary delay. Because recovering the stolen property was the appellant's suggestion, and because the delay was only twenty to twenty-five minutes in duration, the delay was not unnecessary; therefore, the evidence was admissible. We disagree that the evidence was admissible.

We do agree with the State that section 52.02(a) does not require that a police officer immediately do one of the enumerated acts or that a juvenile be taken immediately to a juvenile processing office. The key for timing questions is without unnecessary delay. But, section 52.02(a) requires more than simply acting without unnecessary delay. The statute has three requirements once the juvenile is taken into custody: 1) the officer must do one of six enumerated acts; 2) without unnecessary delay; *and* 3) without first taking the child to any place other than a juvenile process-

ing office. *See* TEX. FAM.CODE § 52.02(a); *Comer*, 776 S.W.2d at 194–95. By the clear language of the statute, it is not merely a question of whether the officer did one of the six enumerated options without unnecessary delay, but also whether the officer took the juvenile to any other place first.[9] TEX. FAM.CODE § 52.02(a); *Comer*, 776 S.W.2d at 194–95.

In this case, because the trial court denied the motion to suppress, the implied finding is that the officers complied with section 52.02(a). The record, however, does not support this finding. Garcia's testimony established that the officers did not take the appellant to the juvenile division without first going to any other place.

█ In a similar case involving section 52.02(b), the Houston First Court of Appeals relied on our opinion in *Russell v. State*, 717 S.W.2d 7, 9 (Tex.Crim.App. 1986), and on *In re C.R.*, 995 S.W.2d 778, 783 (Tex.App.—Austin 1999, pet. denied),[10] to hold that once the defendant produces evidence of a section 52.02(b) violation, the burden then shifts to the State to prove compliance with section 52.02(b). *Tuy Pham v. State*, 36 S.W.3d 199, 201–02 (Tex.App.—Houston [1st Dist.] 2000, no pet.). Although the issue in *Tuy Pham* centered around section 52.02(b), we see no reason why this analysis would not also apply to section 52.02(a). Therefore, once a juvenile produces evidence that section 52.02(a) was violated, the burden then shifts to the State to show compliance with section 52.02(a). *See Id.; cf. Baptist Vie*

---

**9.** At the time of the offense, section 52.02(a) had five subsections, which contained the options of the officer once he had taken the child into custody. We said in *Baptist Vie Le* that taking the juvenile to a section 52.025 juvenile processing office was in essence a sixth option. *See Baptist Vie Le*, 993 S.W.2d at 653. The current version of section 52.02(a) has six subsections, so there are now

seven options an officer has once he has taken the child into custody. We also note that section 52.02(c) provides an exception to complying with section 52.02(a).

**10.** *In re C.R.* relied on article 38.23 to expressly hold that the State bears the burden of showing compliance with section 52.02(b). *In re C.R.*, 995 S.W.2d at 783.

*Le,* 993 S.W.2d at 654–56 (noting that a statement should have been suppressed when the record did not show compliance with section 52.02(a), and remanding for harm analysis when the evidence was admitted in violation of article 38.23 of the Code of Criminal Procedure).

Here, the appellant and the State elicited the same evidence at the hearing. This evidence showed that the officers first took the appellant to recover the stolen property before they transported him to the juvenile division. In fact, the State admitted that the officers took the appellant to the juvenile division after they recovered the stolen property. Ct. R. vol. III, at 446. The only evidence elicited by the State established that the appellant was not transported to the juvenile division "without first being taken to any other place." Accordingly, the record does not support the implied finding that section 52.02(a) was followed. *See Ross,* 32 S.W.3d at 855 (noting that implied finding must be supported by the record).

■■■ In *Comer* and in *Baptist Vie Le,* we established a practice of strict compliance with Family Code section 52.02. It is the legislature's intent that once a child has been taken into custody, the officer can only do one of six acts without unnecessary delay and without going to any other place first; the officer's investigative function is thus, expressly curtailed. *See Baptist Vie Le,* 993 S.W.2d at 655; *Comer,* 776 S.W.2d at 196. It does not matter that the appellant led Garcia to the stolen property since section 52.02(a) limits the officer's investigative function. *See id.* The procedure and options are clear in section 52.02(a), and first taking the juvenile, at his own suggestion, to the location of sto-

len property is not enumerated. Because the appellant was not transported to the juvenile division "without first being taken to any other place," the officers violated section 52.02(a).[11] *Comer,* 776 S.W.2d at 196–97.

## Article 38.23

■■■ Having found a violation of section 52.02(a), we must determine whether exclusion is appropriate. *Cf. Comer,* 776 S.W.2d at 197 (holding that evidence should have been suppressed under article 38.23 where this Court could not say with confidence that had the juvenile been promptly taken to juvenile facility "he would still have chosen to confess his crime."). Article 38.23 requires the exclusion of evidence "obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas." Tex.Code Crim. Proc. art. 38.23(a). Evidence should be excluded once a causal connection between the illegality and the evidence is established. *See State v. Daugherty,* 931 S.W.2d 268, 270 (Tex.Crim. App.1996) ("Once the illegality and its causal connection have been established, the evidence must be excluded.").

Here, the violation occurred when the officers deviated from their route to the juvenile division and instead went to the stolen property's location. Tex. Fam.Code § 52.02(a). Although the officers deviated from the proper route at the appellant's behest, a juvenile's request does not take precedence over the clear mandate of a statute designed to protect him. The evidence was obtained by violating section 52.02(a) and indeed would not have been

---

**11.** We note that a strict interpretation would not necessarily foreclose a case where exigent circumstances may justify not going first to any place other than a juvenile processing office. That question, however, is not before us, and there is no suggestion of exigent circumstances in this case.

obtained at that time [12] if section 52.02(a) had not been violated. There is clearly a causal connection [13] between the recovery of the stolen property and the illegality of

going first to the location of the stolen property.[14] Accordingly, the evidence concerning the recovery of the stolen property should have been suppressed.[15] TEX.CODE

12. Of course, had the officers taken the appellant directly to the juvenile division and *then* gone to recover the stolen property by themselves, they would have acted in full compliance with the law. Similarly, under the "inevitable discovery" doctrine announced by the United States Supreme Court in *Nix v. Williams*, 467 U.S. 431, 448, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), testimony concerning the recovery of the stolen property would be admissible under this exception to the Fourth Amendment exclusionary rule. This Court, however, has held that the Texas statutory exclusionary rule codified in article 38.23 does not contain an "inevitable discovery" exception. *See Daugherty*, 931 S.W.2d at 271–73. That issue is not before us.

13. Presiding Judge Keller's dissent is wide of the mark when she argues that there was no causal connection between the detour and the recovery of the evidence. The dissent says that the evidence was recovered during the detour, but that the appellant's desire to cooperate caused the recovery of the property. The dissent is improperly focusing on the appellant's desire to cooperate and brushing over the illegality or violation of law. The officers were not authorized to first take the appellant to the stolen property at the appellant's desire, in fact the law forbids this conduct. If anything, the desire may have caused the officers to violate the law. But when the purpose of violating the law (the detour) is to recover the stolen property, we fail to see how there can be anything other than a causal connection between the violation of law and the evidence concerning that very stolen property. Stated another way, the evidence concerning the recovery of the stolen property was obtained as a consequence of the officers first unlawfully taking the appellant to the stolen property. *Cf. Janecka v. State*, 937 S.W.2d 456, 465 (Tex.Crim.App. 1996) (holding "any evidence seized pursuant to the warrant was not 'obtained' as a consequence of his perjury."); *Chavez v. State*, 9 S.W.3d 817, 820 (Tex.Crim.App.2000) (Keller, J., concurring) ("In order for Article 38.23 to apply, 'the officers must act illegally in obtaining existing evidence of an offense.' ") (citing *State v.Mayorga*, 901 S.W.2d 943, 946 (Tex.

Crim.App.1995)). Here, the consequence of the illegal detour was the recovery of the property; the officers clearly acted illegally in obtaining the evidence.

Furthermore, we disagree with the dissent's distinction between evidence obtained "in violation of" as opposed to "during a violation of." In *Ebarb v. State*, 598 S.W.2d 842, 850 (Tex.Crim.App.1980) (op. on reh'ing), we held that a gun should have been suppressed under article 38.23. Even though Ebarb had given permission to search her car (which was where the gun was found), we held that the police had illegally detained her, and the consent and the gun's recovery were the result of that illegal detention. *Ebarb*, 598 S.W.2d at 844–45, 850. It could just as easily be said in *Ebarb* that the evidence was obtained during a violation of law, that is the gun was found during the illegal detention, instead of in violation of law. Respectfully, "during a violation" or "in violation" is a semantic distinction without a difference; if the police act illegally in obtaining evidence, then that evidence is obtained in violation of the law for purposes of article 38.23. *Mayorga*, 901 S.W.2d at 946.

14. In *Comer*, because we had previously recognized that a confession is admissible if the taint of an illegal detention is so attenuated that the confession can not be considered obtained in violation of the law, we did an attenuation of taint analysis. *Comer*, 776 S.W.2d at 196. Here, however, we need not do an attenuation of taint analysis because the State did not raise the argument.

15. We note that the Court of Appeals did not expressly discuss article 38.23(a). The Court of Appeals did say that if there was a "literal and rigid" violation of section 52.02(a), such a violation did not warrant automatic suppression. *Roquemore*, 11 S.W.3d at 400. The Court of Appeals reasoned that the purpose of section 52.02(a) is to reduce improper impact on a juvenile in custody. *Id.* Because no improper impact occurred by taking the appellant to the stolen property, section 52.02(a) was not implicated. *Id.* We disagree with the Court of Appeals.

CRIM. PRO. art. 38.23(a); TEX. FAM.CODE § 52.02(a).

■ We also note that the Court of Appeals limited *Comer* to its facts; a written statement taken from a child approximately three hours before compliance with the Family Code is inadmissible. *See Roquemore*, 11 S.W.3d at 400. The Family Code seeks to strike a balance between the competing interests of public safety and child welfare. *See Comer*, 776 S.W.2d at 193. This balance is struck in part by limiting the investigative function of the police. *See Comer*, 776 S.W.2d at 196. The legislature's provision is clear, and we will give effect to its requirements by requiring strict compliance. *See Baptist Vie Le*, 993 S.W.2d at 655. As we said in *Baptist Vie Le*, "We are aware of the disturbing increase in juvenile crime in our State, and we are sympathetic to law enforcement's efforts to deal with violent juvenile offenders. Nevertheless, we must not ignore the Legislature's mandatory provisions regarding the arrest of juveniles." *Id.* The specific facts in *Comer* do give its rationale further meaning, but its rationale was not meant to deal only with written statements that resulted from a three hour delay. We disapprove of the Court of Appeals's limiting of *Comer*.

### CONCLUSION

The testimony regarding the recovery of the stolen property was improperly allowed because the appellant was taken first to the location of the property, an option unavailable under section 52.02(a). This evidence was obtained in violation of section 52.02(a) and is therefore inadmissible. TEX.CRIM. PROC.CODE art. 38.23(a); *Baptist Vie Le*, 993 S.W.2d at 656.

Because the Court of Appeals found no error, it did not do a harm analysis. We remand the case for consideration of this issue.

WOMACK, J., filed a concurring opinion.

HOLCOMB, J., filed a concurring opinion.

KELLER, P.J., filed a dissenting opinion in which KEASLER, and HERVEY, J.J., joined.

WOMACK, J., filed a concurring opinion.

I join the judgment of the Court and Part II–A ("Oral Statements") of its opinion.

There can be exceptions to the requirements of laws, even ones that are very important and that must be obeyed strictly. Necessity justifies conduct that otherwise would be criminal, if the desirability and urgency of avoiding imminent harm clearly outweigh the harm sought to be prevented by the criminal law.[1] Exigencies justify investigations that otherwise would violate the proscriptions of the Fourth Amendment[2] and the Self-incrimi-

---

If evidence is obtained in violation of the laws of Texas, and there is a causal connection between the violation and the evidence, that evidence should be suppressed. TEX.CODE CRIM. PRO. art. 38.23(a); *Daugherty*, 931 S.W.2d at 270. "Neither *Comer* nor article 38.23 support [the] suggestion that evidence otherwise subject to suppression is rendered admissible if an examination of the details of the statutory violation suggest that the violation did not raise the dangers the statute was designed to prevent." 41 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 13.322 (2001). We disapprove of the Court of Appeals's analysis.

1. *See* TEX PENAL CODE § 9.22.

2. " 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' " *Mincey v. Arizona*, 437 U.S.

nation Clause of the Fifth Amendment.[3] What is required is a balancing of the need for the exception against the need to enforce the statutory or constitutional command.

While the need to preserve evidence may constitute an exigency in some circumstances,[4] there is no indication here that the need to retrieve the stolen property was urgent or that it could not have been met by other means than taking the juvenile to the place where it was located before taking him to the juvenile division. The harm that section 52.02 of the Family Code seeks to prevent is not clearly outweighed by any exigency. I agree that the statute must be enforced in this case, and that it must be strictly observed in general. I write only to point out that the statute may not prevail against every other need of society in another case.

HOLCOMB, J., filed a concurring opinion.

The majority opinion states that we have "clear[ly]" "established a policy of strict compliance with the Family Code" and states further that we will "continue to require strict compliance with the Family Code." I am uncertain why these statements were included in the majority opinion or what these statements really mean. Neither of the cases relied on by the majority even mentioned "strict compliance," much less "clearly" established a policy of "strict compliance." *See Baptist Vie Le v. State*, 993 S.W.2d 650 (Tex.Crim.App.

1999), and *Comer v. State*, 776 S.W.2d 191 (Tex.Crim.App.1989). In *Baptist Vie Le*, we did "remind police officers of the Family Code's strict requirements." *Baptist Vie Le*, 993 S.W.2d at 655. However, we certainly did not mean to imply that some laws should be enforced more strictly than others. All laws enacted by the Legislature are of equal dignity and deserve equal enforcement. Hence, it is clearly wrong to suggest that this Court can choose which laws require more (or less) compliance. With these comments, I respectfully join the opinion of the Court.

KELLER, P.J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined.

In explaining why testimony about the physical evidence in this case should have been suppressed, the Court relies upon language in *Comer*[1] explaining why the evidence in that case should have been suppressed. The *Comer* court said:

We cannot say with any degree of confidence that, had appellant been transported "forthwith" to the custody of the juvenile detention facility ... he would still have chosen to confess his crime.

In *Comer*, then, the Court left open a door to the admission of evidence if the child "would still have chosen to confess his crime." In other words, evidence should not be suppressed if an appellate court can say with confidence that the evidence would have been obtained even if the child had been taken "forthwith" to the deten-

---

385, 392, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (quoting *Wayne v. United States*, 115 U.S.App. D.C. 234, 241, 318 F.2d 205, 212 (1963) (opinion of Burger, J.)).

**3.** "We conclude that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination."

*New York v. Quarles*, 467 U.S. 649, 657, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984).

**4.** *See United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973).

**1.** *Comer v. State*, 776 S.W.2d 191 (Tex.Crim. App.1989).

tion facility. I believe the evidence in this case fits through that door.

Before appellant led police to the stolen property, he told them he wanted to cooperate. He told police that he had and two others had robbed a woman at a Mobil station and said he would lead them to the location where some of the stolen property had been taken. So, appellant had already confessed at the time he offered to lead the police to the stolen property. Finding the stolen property happened *during* the detour, but it was not *caused by* the detour; it was caused by appellant's desire to cooperate. In other words, there was no causal connection between the detour and the finding of the property.

Article 38.23 provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Obtained "in violation of" does not mean obtained "during a violation." It means obtained "because of a violation."[2] As the Court of Appeals said, "The exclusionary rule is applicable to those violations that are related to the purpose of the exclusionary rule-deterrence of unlawful police activity and judicial integrity."[3] That court

concluded that the conduct of the police in this case, "in no way caused appellant to make the statements."[4]

In *Johnson v. State*, we held that if evidence is not "obtained" in violation of the law, then its admission at trial does not contravene article 38.23.[5] We explained that the attenuation doctrine is not an "exception" to article 38.23 but is, rather, a method of determining whether evidence was "obtained" in violation of the law. In *Bell v. State*[6] we pointed out that "evidence is not excluded simply because it is discovered at a point in time after an illegal detention." If evidence is not the product of the illegality, it should not be suppressed.[7] On the facts of this case, I would hold that the physical evidence in this case was not obtained in violation of the law.

I have another disagreement with the Court's opinion. The Court makes an exception to its holding that § 52.02 is to be construed strictly by allowing for the possibility that evidence would be admissible if there were exigent circumstances. I do not know the source of this exception. We have never held that there is an "exigent circumstances" exception to the requirements of either § 52.02 or article 38.23. It seems the Court is saying that if it were really, really necessary, we would not strictly enforce those statutes. I find no

---

**2.** In contending that this distinction is meaningless, the Court relies upon *Ebarb v. State*, 598 S.W.2d 842 (Tex.Crim.App.1979)(opinion on rehearing). But the defendant in *Ebarb* consented *after* she was illegally stopped. The police would never have procured her consent absent the illegal activity; so, her consent could not constitute an independent cause for obtaining the evidence. On the other hand, appellant's offer of cooperation occurred *before* the illegal detour. That offer of cooperation was untainted by illegality and evidence obtained as a result of that offer is not obtained in violation of the law.

**3.** *Roquemore v. State*, 11 S.W.3d 395, 400 (Tex.App.—Houston [1 Dist.] 2000).

**4.** *Id.*

**5.** *Johnson v. State*, 871 S.W.2d 744 (Tex.Crim. App.1994).

**6.** *Bell v. State*, 724 S.W.2d 780, 787 (Tex.Cr. App.1986), cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987).

**7.** *See*, e.g., *Maixner v. State*, 753 S.W.2d 151 (Tex.Crim.App.1988). (Statements were not obtained by the exploitation of illegal arrest.)

justification for applying such a case-by-case balancing test. If the Court is going to say, as it does today, that evidence is inadmissible if obtained in violation of the "without taking the child anywhere else" language of § 52.02(a), then that holding should apply to all cases.

Moreover, if exigent circumstances permit the introduction of evidence this Court finds to have been obtained in violation of § 52.02, then we should assume that the trial court found such exigent circumstances and defer to that implied finding. The trial court could reasonably have believed that when a confessing offender offers to lead police to evidence of a crime, it would be irresponsible for the police to say, "No thank you." There is always some degree of exigency when collecting evidence-that is why police go to crime scenes promptly instead of waiting a week or two.

I respectfully dissent.