In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00008-CV
______________________________


 
 
IN THE MATTER OF J.M.S., A JUVENILE
 
 


                                              

On Appeal from the 76th Judicial District Court
Titus County, Texas
Trial Court No. JV578


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

In a single point of error, J.M.S., a minor, asserts his probation was improperly modified,
placing him in the custody of the Texas Youth Commission until his twenty-first birthday, because
his statement detailing his involvement in a burglary was improperly admitted into evidence at his
probation modification trial.


 J.M.S. bases his assertion on the argument that his statement was taken
in violation of juvenile processing and detention provisions of the Texas Family Code. Our answers
to two questions will determine the outcome of his appeal:
1.         Did any violation in J.M.S.'s initial questioning by investigators cause him to make
his statement about being involved in the burglary?
2.         Was J.M.S.'s statement "signed in the presence of a magistrate" as required by
Section 51.095(a)(1)(B)(i) of the Texas Family Code, although J.M.S. had first
signed the statement in the presence of an investigator?
Because we hold that (1) J.M.S.'s statement did not result from any violation in his initial
questioning, and (2) his statement was ultimately properly signed in the presence of a magistrate, we
affirm the trial court's modification of J.M.S.'s probation.
 
 
1. J.M.S.'s Statement Did Not Result From Any Violation in His Initial Questioning
J.M.S. first argues that investigators improperly questioned him about his possible
involvement in a burglary by conducting his interview in a room not designated as a juvenile
processing office. According to J.M.S., investigators should have taken him "without unnecessary
delay" to an office so designated or complied with any one of six other enumerated options. See
Tex. Fam. Code Ann. § 52.02(a) (Vernon Supp. 2004–2005), § 52.025(a) (Vernon 2002). Because
they did not do so, J.M.S. says, the trial court erred by admitting his statement into evidence.
We are to review the admission of evidence for an abuse of discretion by the trial court. 
Salazar v. State, 38 S.W.3d 141, 153 (Tex. Crim. App. 2001). We should affirm the trial court's
decision if it is within "the zone of reasonable disagreement." Id. The "trial court is the sole trier
of fact and judge of the credibility of the witnesses and the weight to be given their testimony." State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Where the trial court makes no explicit
finding of fact, we assume the court made implied findings that support its ruling, provided such
implied findings are supported in the record. Roquemore v. State, 60 S.W.3d 862, 866 (Tex. Crim.
App. 2001).


 If the trial court's ruling is correct under any theory of law applicable to the case, it will
be sustained. Id.
We are not required to determine whether investigators violated Section 52.02 or Section
52.025 when they initially questioned J.M.S. before taking him to the juvenile processing office,
because we believe the trial court was within its discretion in impliedly finding that J.M.S.'s
statement was not obtained as a result of any such violation. Even if J.M.S. was in custody at the
time of his initial questioning—and therefore his questioning violated Section 52.02 of the Texas
Family Code—exclusion of his statement on that basis would also require the trial court to have
found that the violation resulted in J.M.S.'s statement. In Gonzales v. State, 67 S.W.3d 910, 912
(Tex. Crim. App. 2002), the Texas Court of Criminal Appeals ruled that a Section 52.02 violation
does not require exclusion of evidence unless the evidence was obtained as a result of the violation
and thus was evidence "obtained . . . in violation" of law as proscribed by Article 38.23(a) of the
Texas Code of Criminal Procedure. See Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp.
2004–2005). We believe the trial court was at least in the zone of reasonable disagreement in
impliedly finding no such causal connection. See Salazar, 38 S.W.3d at 154. Therefore, the trial
court did not abuse its discretion in admitting the statement over J.M.S.'s objection premised on his
initial questioning.
2. J.M.S.'s Statement Was Properly Signed in the Presence of a Magistrate
J.M.S. also claims the trial court erroneously admitted his statement because he initially
signed it in the presence of an investigator instead of the appropriate magistrate. We disagree.
Section 51.095 provides, among other things, that "the statement of a child is admissible in
evidence . . . if . . . the statement [is] signed in the presence of a magistrate by the child with no law
enforcement officer or prosecuting attorney present." Tex. Fam. Code Ann. § 51.095(a)(1)(B)(i)
(Vernon 2002).
It is undisputed that the investigator questioning J.M.S. took him to the magistrate's office,
a designated juvenile processing office, after determining he had been involved in the burglary. 
Once there, the investigator left J.M.S. alone with the magistrate, who advised J.M.S. of his rights. 
After determining J.M.S. understood his rights and still wanted to make a statement, the magistrate
exited and allowed the investigator to re-enter the room to record J.M.S.'s dictated confession. The
complained-of conduct occurred at the conclusion of J.M.S.'s meeting with the investigator. With
the one-page statement nearly completed, the investigator noted the date and time at the bottom of
the page and asked J.M.S. to sign the document, adopting it as his own. The parties do not dispute
that this action constituted a clear violation of Section 51.095(a)(1)(B)(i); the question is whether
the initial error was made irrelevant or was cured by the magistrate's subsequent actions resulting
in the statement being re-signed.
The magistrate testified she re-entered her office after the investigator indicated he was
finished taking J.M.S.'s statement. Once again alone with J.M.S., the magistrate began reviewing
the one-page statement, asking whether J.M.S. acknowledged making the statement, whether it was
correct, and whether it contained the information he wished to convey. Reaching the bottom of the
page, the magistrate noticed that J.M.S. had already signed the statement. She recognized that this
did not comport with proper procedure, so she corrected the time and crossed out J.M.S.'s signature. 
Then, only after she was satisfied that J.M.S. fully understood the nature and contents of his
statement and that he knowingly, intelligently, and voluntarily waived his rights, the magistrate asked
J.M.S. to sign the statement again. 
The magistrate testified:
Q         And then after you were satisfied that [J.M.S.] understood and that this was
his statement, is that when he signed the second time?
A         It was.
            . . . .
Q         Okay. Now after he signed that did you then proceed to certify the statement?
A         I did.
Q         And how did you do that?
A         I read over this form. It's a certification form, and I go through it and make
sure that I did everything that I said I did in the first part of the form. Read over it,
make sure that, you know, the statement's in writing, that the child was in my office,
that I gave him his juvenile warning, make sure that he signed it in my presence, and
make sure that he, you know, understands.
            . . . .
Q         Okay, and is it your belief that he knowingly and intelligently waived his
rights and made this statement?
A         It is.
            . . . .
Q         Now, . . . are you telling the Court that you took this statement, and you
certified that you read him all his rights and that he signed the statement, and that's
what he wanted to do? Nobody made him?
A         This is correct.
Q         No coercion?
A         No, sir.
There is no question that the Texas Court of Criminal Appeals requires strict compliance with
those provisions of the Texas Family Code dealing with the release or delivery of juveniles and the
admissibility of juvenile statements. Roquemore, 60 S.W.3d at 868; Baptist Vie Le v. State, 993
S.W.2d 650, 655–56 (Tex. Crim. App. 1999); Comer v. State, 776 S.W.2d 191, 196–97 (Tex. Crim.
App. 1989). We believe that, despite the investigating officer's error, J.M.S.'s rights and privileges
were protected when the magistrate spoke privately with J.M.S. and determined that he not only
understood the nature and contents of his statement, but that he was also signing it knowingly,
intelligently, and voluntarily. We hold the trial court correctly found the magistrate's actions,
resulting in J.M.S.'s re-signing the statement, adequately complied with the statute, notwithstanding
the earlier error, making the statement admissible.
Conclusion
Having determined that there was no error in admitting J.M.S.'s statement, we affirm the
judgment of the trial court.
 
 
                                                                        Josh R. Morriss, III
                                                                        Chief Justice
 
Date Submitted:          July 28, 2004
Date Decided:             September 8, 2004