**AFFIRMED and Opinion Filed November 14, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00130-CR**

**ZADARRON LEON REEDY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F21-15511-H**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Smith, and Garcia
Opinion by Justice Garcia

Appellant Zadarron Leon Reedy appeals his conviction for capital murder. We overrule his three appellate issues and affirm.

### I. BACKGROUND

In August 2021, appellant was indicted for capital murder. The indictment accused him of killing Thomas Scott in the course of committing and attempting to commit the offense of robbery against Scott. The indictment alleged that appellant was 15 years old at the time of the slaying and 17 at the time of the indictment.

Appellant was tried as an adult, and the jury found appellant guilty of capital murder. This resulted in a sentence of life imprisonment with parole eligibility.

Appellant timely appealed.

## II.  ISSUES PRESENTED

Appellant presents three issues on appeal. He argues (1) the evidence is legally insufficient to support his conviction, (2) the trial judge erred by denying appellant's request for a lesser included charge of felony murder, and (3) the trial judge erred by denying appellant's motion to suppress his custodial statement.

## III.  ANALYSIS

### A.  Issue One: Sufficiency of the Evidence

Appellant argues that the evidence is legally insufficient as to two elements of the charged offense of capital murder. Specifically, appellant argues that the evidence is legally insufficient to prove (1) that he shot Scott in course of committing robbery as opposed to theft or unauthorized use of a motor vehicle or (2) that he intended to cause Scott's death.

#### 1.  Standard of Review and Applicable Law

Evidence is legally sufficient to support a conviction if any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *McPherson v. State*, 677 S.W.3d 663, 664 (Tex. Crim. App. 2023). We consider the evidence in the light most favorable to the verdict, and we may not reweigh the evidence, substitute our judgment for the jury's, or act as a thirteenth juror. *Id*. This

–2–

standard gives full play to the jury's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.*

A person commits capital murder if he intentionally commits murder in the course of committing or attempting to commit robbery or certain other crimes. TEX. PENAL CODE ANN. § 19.03(a)(2). A person commits robbery if, in the course of committing theft, and with the intent to obtain or maintain control of someone else's property, he intentionally, knowingly, or recklessly causes bodily injury to another. *Id.* § 29.02(a)(1). "In the course of committing theft" means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt to commit or commission of theft. *Id.* § 29.01(1). A person commits theft if he unlawfully appropriates property with the intent to deprive the owner of it. *Id.* § 31.03(a).

## 2.     Review of the Evidence

Police officer Corey Wheeler testified that he was on patrol the night of June 20, 2020, when he responded a call about a shooting near the intersection of Ann Arbor and Marsalis.[1] He went to a Sam's 99 Cent Store near that intersection and found a dead body lying in the parking lot. Wheeler examined the body and found what appeared to be an entry wound on the person's left side and an exit wound

---

[1] A 911 operator testified that this intersection is in Dallas and in Dallas County.

–3–

"behind the back side of his right shoulder blade area." Other evidence identified the decedent as forty-three-year-old Thomas Scott.

Wheeler went inside the store and watched a video that had been taken by a security camera. That video was admitted into evidence as State's Exhibit 3. The video is four minutes and sixteen seconds long, and the date/time stamp indicates that it begins on June 20, 2020, at 11:52:15 p.m. It shows the parking lot in front of the store, with Scott's car parked next to the street at the top left of the video. This is a screen capture of the beginning of the video, with the license plate on the front of the silver car near the center of the screenshot redacted:



At roughly 11:53:29, Scott emerged from his car and then walked to the left, eventually leaving the camera's field of vision. Wheeler testified that an abandoned car wash was located in the area where Scott went. At about 11:55:58, a group of four people entered the camera's field of vision from the left. One of them went to the driver's side of Scott's car and got in. The car's headlights came on at roughly

–4–

11:56:07. At roughly 11:56:10, Scott appeared on the left side of the camera's field of vision, and he ran to his car as it began to drive away to the right. Scott reached the passenger side of the car at roughly 11:56:12 and immediately fell to the ground as the car continued to move away. The car then stopped just short of the road, and three people ran to the car and got in. Then the car pulled out into the street and drove away to the right.

A medical examiner testified that Scott died from a single gunshot wound that perforated his heart. She further testified that he had only seconds to live once he was shot.

Scott's vehicle was recovered about 24 hours later. A single shell casing was found in the back seat.

Appellant was arrested after a police investigation. Judge Nancy Kennedy[2] read appellant his rights because he was a juvenile. Then Detective Scott Sayers interviewed appellant. The interview, including Judge Kennedy's reading of appellant's rights, was video recorded, and the recording was admitted into evidence over appellant's objection as State's Exhibit 33. The video's audio quality is poor, and during trial the State asked Sayers what appellant said in his interview when he and Sayers were talking about Scott's running up to the side of the vehicle. Sayers testified, "He said he viewed the complainant as a threat."

---

[2] Judge Kennedy was subsequently elected to this Court in 2022.

### 3.     Application of the Law to the Facts

Appellant's first argument is that there is insufficient evidence to show that he committed the offense of robbery. He contends that the evidence shows that he committed only the offense of theft or unauthorized use of a motor vehicle and that the offense, whichever offense it was, was already completed before Scott's death. Therefore, he argues, the evidence was insufficient to support the finding that he was guilty of capital murder, i.e., that he killed Scott in the course of committing or attempting to commit robbery.

We reject appellant's argument. As relevant to this case, the elements of robbery include injurious conduct committed in the course of committing theft. PENAL § 29.02(a)(1). "In the course of committing theft" means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft. *Id*. § 29.01(1). The surveillance video shows that Scott's car had traveled only about one car's length before Scott reached the passenger-side window and was fatally shot. The jury could reasonably conclude beyond a reasonable doubt that appellant shot Scott while appellant was committing or in immediate flight after committing the offense of theft—i.e., in the course of committing theft—and thus committed robbery. *See Chamberlin v. State*, 704 S.W.2d 801, 803 (Tex. App.—Dallas 1985, no pet.) ("[V]iolence accompanying an escape immediately subsequent to a completed theft can constitute robbery [under § 29.02]."). Thus, the jury could reasonably conclude beyond a reasonable doubt that

appellant killed Scott in the course of committing robbery, as required for the offense of capital murder. *See* PENAL § 19.03(a)(2).

Appellant's other argument under issue one is that there is insufficient evidence that he intended to cause Scott's death, which is an element of capital murder in this case. *See id*. § 19.03(a)(2). In support, he argues that the evidence shows that his entire interaction with Scott took place within seconds and that he fired only one shot. He also cites testimony by Detective Sayers that, under the circumstances, appellant would not have known who was running up to the car as appellant was starting to drive away.

We reject appellant's argument. The jury may infer intent from a defendant's acts, his words, his conduct, the method used to commit the crime, and the nature of the wounds inflicted. *Pence v. State*, No. 05-22-00637-CR, 2023 WL 5089276, at *4 (Tex. App.—Dallas Aug. 9, 2023, pet. ref'd) (mem. op., not designated for publication). Moreover, a jury may infer specific intent to kill from use of a deadly weapon in a deadly manner unless it is reasonably apparent that death or serious injury could not result from the weapon's use. *Palomo v. State*, No. 05-16-01459-CR, 2018 WL 636105, at *4 (Tex. App.—Dallas Jan. 31, 2018, pet. ref'd) (mem. op., not designated for publication). If a deadly weapon is fired at close range and death results, the law presumes an intent to kill. *Id*. A firearm is a deadly weapon. PENAL § 1.07(a)(17).

The jury could reasonably conclude from the evidence that appellant shot a gun at Scott at close range, striking him in the chest and killing him within seconds. Moreover, Sayers testified that appellant told him during his interview that appellant viewed Scott as a threat. Based on the evidence and the authorities cited above, we conclude that the evidence was sufficient to support the jury's finding that appellant possessed the requisite intent to murder Scott.

We overrule appellant's first issue.

## B.    Issue Two: Jury-Charge Error

In his second issue, appellant argues that the trial judge erred by denying his request to submit a lesser included offense—felony murder—to the jury.

### 1.    Standard of Review and Applicable Law

We review a trial judge's refusal to submit a lesser included offense instruction for abuse of discretion. *Chavez v. State*, 666 S.W.3d 772, 776 (Tex. Crim. App. 2023).

Whether a defendant is entitled to a lesser-included-offense instruction turns on a two-part test. *Id*. First, we compare the statutory elements of the alleged lesser included offense with the statutory elements of the greater offense and any descriptive averments in the indictment. *Id*. If proof of the lesser offense is included within proof of the greater offense, the first step of the test is satisfied. *Id*.

Second, there must be evidence from which a rational jury could find the defendant guilty of only the lesser offense. *Id*. This requirement is met if there is

affirmative evidence of a factual dispute that raises the lesser offense and rebuts or negates other evidence establishing the greater offense. *Id*. It does not matter whether the dispute is based on direct or circumstantial evidence so long as a rational jury could interpret the record in a way in which it could find the defendant guilty of only the lesser included offense. *Id*. Even a scintilla of evidence is sufficient to raise such a dispute, but it must be directly germane to the lesser included offense and present that offense as a valid, rational alternative to the greater offense. *Id*. at 777. If the defendant either presents evidence that he or she committed no offense at all or presents no evidence, and no evidence otherwise raises the issue, a lesser-included-offense charge is not required. *Id*.

There must be some evidence directly germane to the lesser included offense for the jury to consider before a lesser-included-offense instruction is warranted; the possibility that the jury might disbelieve crucial evidence pertaining to the greater offense is not enough. *Ransier v. State*, 670 S.W.3d 646, 650 (Tex. Crim. App. 2023). Unless the evidence presented is subject to different interpretations consistent with either the greater or the lesser included offense, evidence directly germane to a lesser included offense exists only if there is affirmative evidence that both raises the lesser included offense and rebuts or negates an element of the greater offense. *Id*.

## 2.      Application of the Law to the Facts

The State concedes that the first step of the lesser-included-offense test is satisfied, and we will assume without deciding that it is. The question presented is whether the evidence adduced at trial satisfied the second step of the test.

Appellant argues that the evidence raised the lesser included offense of felony murder by tending to show either (i) he did not intend to kill Scott or (ii) he did not commit the offense of robbery. He relies specifically on the following evidence:

- statements appellant made in his interview with Detective Sayers that he viewed Scott as a threat and that he did not know that Scott had died;

- Sayers's testimony that, under the circumstances, appellant would not have known who was running up to the car as appellant was starting to drive away; and

- the surveillance video of the crime.

Appellant also cites a note that the jury sent to the judge during deliberations, but that is not evidence that could potentially satisfy the second part of the lesser-included-offense test.

We reject appellant's arguments. The evidence that appellant viewed Scott as a threat at the time he shot Scott does not logically tend to show that appellant lacked the intent to kill Scott when he shot him. Nor does the evidence that appellant did not know whether Scott had died or that appellant may not have known who Scott was tend to negate the element of intent to kill. Finally, the surveillance video depicts nothing that would tend to show that appellant lacked the intent to kill. Accordingly,

–10–

there is no evidence bearing on the element of intent that supports a lesser-included-offense instruction for felony murder.

We also conclude that no evidence supports a conclusion that appellant was not guilty of robbery but was guilty of theft of a vehicle or unauthorized use of a motor vehicle. The surveillance video shows that appellant shot Scott within a second or two after appellant began to drive away in Scott's car and had traveled only about a car's length in distance. The video does not reasonably support a conclusion that appellant did not commit robbery, i.e., that appellant did not shoot Scott while committing or in immediate flight after committing the offense of theft.

We overrule appellant's second issue on appeal.

## C. Issue Three: Denial of Motion to Suppress

In his third and final issue, appellant argues that the trial judge erred by denying his request to suppress a custodial statement—specifically, a video recording of his interview with Detective Sayers on June 23, 2020, after appellant was taken into custody.

### 1. Standard of Review

We review a ruling on a motion to suppress for abuse of discretion under a bifurcated standard of review. *State v. Torres*, 666 S.W.3d 735, 740 (Tex. Crim. App. 2023). We give almost total deference to the trial judge's determination of historical facts and the trial judge's rulings on mixed questions of law and fact, especially when those determinations are based on an assessment of credibility and

–11–

demeanor. *Id.* We review de novo pure questions of law and rulings on mixed questions of law and fact that do not turn on an assessment of credibility and demeanor. *Id.* at 740–41.

### 2. Relevant Facts

On June 23, 2020, while he was in custody, appellant participated in a video-recorded interview with Detective Sayers. The video, State's Exhibit 33, shows that Judge Nancy Kennedy first read him his rights in the presence of two witnesses. Appellant then stated that he wanted to talk. Detective Sayers then entered the room and conversed with appellant for about 23 minutes.

On June 26, 2020, Judge Kennedy signed findings of fact and conclusions of law. She recited that she had reviewed the video recording, and she found that appellant was given "all warnings of rights specified by law before making any statement." She further found that appellant "knowingly, intelligently, and voluntarily waived these rights prior to and during the making of his statement and that [appellant] fully understands the nature and contents of the statement." Finally, she found that appellant made the recorded statement of his own free will and that "he was not promised any benefit tangible or intangible and was not coerced or forced in any manner to give this statement."

Appellant contends that he made a motion to suppress asserting that the recorded statement was taken in violation of Family Code § 51.095 and that he did not knowingly, intelligently, freely, and voluntarily waive his rights under that

–12–

section. But we do not find a motion to suppress the recorded statement in the appellate record. Appellant appears to be referring to the following item in his "Omnibus Pretrial Motion" filed on January 17, 2023:

**V.**

Defendant requests a hearing outside the presence and hearing of the jury to determine the admissibility of any physical evidence recovered during the investigation of this case which the District Attorney intends to offer as evidence herein, and would request the Court to suppress this evidence if the Court determines that the evidence was obtained in violation of the United States Constitution or federal law or the Constitution or laws of the State of Texas.

GRANTED____    DENIED____                    AGREED ⨯  WITHDRAWN____

On January 24, 2023, the presiding trial judge held a hearing about the admissibility of the recorded statement. The evidence introduced at the hearing consisted of: (1) a stipulation of evidence that identified Judge Kennedy as the magistrate who warned appellant of his rights and Detective Sayers as the person who conducted the interview; (2) the video recording itself; (3) Judge Kennedy's June 26, 2020 findings and conclusions; and (4) the written warning that Judge Kennedy gave appellant, signed by two witnesses. Appellant's counsel conceded that Judge Kennedy complied with "the statute" and limited his argument to disputing Judge Kennedy's finding that appellant "truly understood what was going on and freely and voluntarily waived his rights not to talk to the police." Counsel made only two specific complaints about how the interview was conducted: (i) Detective Sayers entered the room before Judge Kennedy was finished and (ii) the interview "wasn't an interrogation" but rather was in response to a question

–13–

appellant had about his "predicament." Beyond that, counsel simply asked the presiding trial judge to watch the recording of the interview and "judge for herself" whether appellant freely and voluntarily made the statement with a true understanding of his rights and what was going on. After hearing argument from the State, the presiding judge took the matter under advisement.

We see no written order on appellant's request to suppress the recorded statement in the appellate record. There was a hearing on January 30, 2023, at which appellant was admonished. During that hearing, an attorney mentioned that the presiding judge had sent out an email about the motion to suppress, but the attorney did not say what the email said. Then, during trial the State offered the video recording into evidence, and appellant's attorney said, "[W]e have the same objection as previously stated to the Court." The trial judge overruled the objection and admitted the recording into evidence.

### 3. Applicable Law

Because appellant was a juvenile when he was arrested, the Family Code controls issues involving his substantive rights. *See Roquemore v. State*, 60 S.W.3d 862, 866 (Tex. Crim. App. 2001). Family Code § 51.095 prescribes requirements for making a child's statement admissible in future proceedings. *See* TEX. FAM. CODE ANN. § 51.095; *see also id*. § 51.02(2)(A) (defining "child" as a person who is at least ten years old but younger than 17). One requirement applicable to the statement involved in this case is that the child must have "knowingly, intelligently, and

–14–

voluntarily" waived his or her rights, including the right to remain silent. *See id.* § 51.095(a)(5)(A). There is little caselaw interpreting this provision, but it is substantially the same as a provision in Article 38.22 of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2); *see also McIntyre v. State*, 619 S.W.3d 311, 323 (Tex. App.—Fort Worth 2021, pet. ref'd) (noting that the two provisions are substantially the same). Section 51.095(a)(5)(A) also resembles Article 38.21, which provides, "A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." CODE CRIM. PROC. art. 38.21. Because the statutes are similar, we consider precedents interpreting Article 38.21 and Article 38.22 to be instructive in applying the "knowingly, intelligently, and voluntarily" standard found in § 51.095(a)(5)(A).

Once appellant challenged the voluntariness of his recorded statement, the State bore the burden of proving by a preponderance of the evidence that the statement was voluntary. *See Vasquez v. State*, 411 S.W.3d 918, 920 n.11 (Tex. Crim. App. 2013) (applying Article 38.22). A claim of involuntariness can be based on factors such as the following:

- overreaching by law enforcement;
- duress brought on by hallucinations, illness, medications, or a private threat;
- the defendant's lack of mental capacity to understand his or her rights; or

–15–

- a temporary mental condition that prevented the defendant from understanding what he or she was confessing to.

*See Sandoval v. State*, 665 S.W.3d 496, 526 (Tex. Crim. App. 2022) (applying Article 38.22), *cert. denied*, 144 S. Ct. 1166 (2024). On the other hand, "youth, intoxication, mental retardation, and other disabilities are usually not enough, by themselves, to render a statement inadmissible." *Id*. (internal quotation marks and footnote omitted).

A promise made to a defendant can render a confession invalid if the promise is positive, made or sanctioned by someone in authority, and of such an influential nature that it would cause a defendant to speak untruthfully. *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004) (applying Article 38.21). But general, unspecific offers to help and general statements that a confession can sometimes result in leniency will not render a confession involuntary or invalid. *Jones v. State*, No. 05-19-00503-CR, 2020 WL 5887019, at *8 (Tex. App.—Dallas Oct. 5, 2020, no pet.) (mem. op., not designated for publication) (applying Article 38.21). And a prediction about future events is not a promise. *Id*.; *see also Bernal v. State*, No. 05-23-00027-CR, 2024 WL 3633394, at *5 (Tex. App.—Dallas Aug. 2, 2024, no pet. h.) (mem. op., not designated for publication) (applying Article 38.21 and holding that "clichés and comforting expressions" like "I promise, everything's going to be ok" are not promises that can make a confession involuntary).

### 4.    Application of the Law to the Facts

Appellant argues that the following factors show that his recorded statement was not knowingly, freely, and voluntarily made:

- Judge Kennedy read the warnings to appellant very quickly and did not perform detailed questioning to verify that he understood his rights;

- Detective Sayers said things calculated to make appellant believe that giving his side of the story would help him in his criminal case; and

- the State adduced no evidence that appellant was familiar with criminal proceedings, possessed normal intelligence, or could read or write.

We conclude that the trial judge did not abuse her discretion by admitting appellant's recorded statement. Judge Kennedy read appellant his rights at a normal speed and even paused once to make sure that appellant was listening to her. When she subsequently asked appellant if he wanted to make a statement, he said he wanted to talk, and she confirmed his decision by asking him, "You do want to talk?" He answered, "Mm-hm." She spent about six minutes in the room with appellant and conversed with him during that time, and she found that appellant knowingly, intelligently, and voluntarily waived his rights. The presiding judge was entitled to credit Judge Kennedy's opinion.

Appellant's interview with Detective Sayers was not long, lasting about 23 minutes. Appellant was able to converse intelligently with Sayers, showing, for example, that he knew the meaning of the word "remorseful."

Appellant argues that Sayers offered improper inducements in order to persuade appellant to speak.[3] Specifically, he complains that Sayers said (i) that when appellant's case went to trial, people would want to know why appellant shot Scott; (ii) that everything matters in a capital case; and (iii) that telling why he shot Scott would make a difference in appellant's capital-murder trial. But none of these statements rises to the level of a positive promise; rather, they all amount to the kind of clichés and comforting expressions that are insufficient to support a claim of involuntariness. *See Bernal*, 2024 WL 3633394, at *5; *see also Jones*, 2020 WL 5887019, at *8.

We overrule appellant's third issue on appeal.

## IV. DISPOSITION

We affirm the trial court's judgment.

/Dennise Garcia//
DENNISE GARCIA
JUSTICE

230130f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)

---

[3] The State argues that appellant forfeited his improper-inducement argument by failing to assert it in the trial court. We assume without deciding that appellant did not forfeit the argument.

–18–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ZADARRON LEON REEDY,
Appellant

No. 05-23-00130-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 1, Dallas County, Texas
Trial Court Cause No. F21-15511-H.
Opinion delivered by Justice Garcia.
Justices Pedersen, III and Smith
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 14th day of November, 2024.