ACCEPTED
07-14-00339-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
6/19/2015 11:58:16 PM
Vivian Long, Clerk

NO. 07-14-00339-CR

IN THE COURT OF APPEALS
FOR THE SEVENTH JUDICIAL DISTRICT
AMARILLO, TEXAS

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS

6/19/2015 11:58:16 PM

VIVIAN LONG
CLERK

## CURTIS WOODRUFF v. THE STATE OF TEXAS

## BRIEF OF APPELLANT

ON APPEAL FROM CAUSE NO. 2014-403,191
IN THE 140TH DISTRICT COURT
LUBBOCK COUNTY, TEXAS
HON. JIM BOB DARNELL, JUDGE PRESIDING

**JULIE GOEN PANGER**
Counsel for Appellant
The Kiechler Law Firm
619 Broadway Street
Lubbock, Texas 79401
Telephone (806) 712-2889
Facsimile (808) 712-2529
State Bar Number 24069793
Email: julie@thelubbocklawyer.com

ORAL ARGUMENT NOT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

**CURTIS WOODRUFF**.....................................................................Defendant/Appellant

JESSE MENDEZ, MARLISE HERNANDEZ BOYLES...................Trial Counsel for Appellant
Attorney at Law
2833 74th Street
Lubbock, Texas  79423

JULIE GOEN PANGER.......................................................... Appellate Counsel for Appellant
The Kiechler Law Firm, PLLC
619 Broadway Street
Lubbock, Texas  79401

**THE STATE OF TEXAS**................................................................... Prosecution/Appellee

TRACI BOWMAN, COURTNEY GRAFFT .................................... Trial Counsel for Appellee
Lubbock County District Attorney's Office
904 Broadway Street, 2nd Floor
Post Office Box 10536
Lubbock, Texas  79408

JEFFREY S. FORD..............................................................Appellate Counsel for Appellee
Lubbock County District Attorney's Office
904 Broadway Street, 2nd Floor
Post Office Box 10536
Lubbock, Texas  79408

# TABLE OF CONTENTS

Identity of Parties and Counsel..................................................................................i

Index of Authorities................................................................................................iii

Statement of the Case ............................................................................................ iv

Issues Presented...................................................................................................... v

Statement of Facts................................................................................................... 1

Summary of the Argument...................................................................................... 4

Argument................................................................................................................. 5

    **Issue One**.......................................................................................................... 5
    The trial court erred in overruling Woodruff's objection to Officer Sims'
    testimony regarding Woodruff's questioning and arrest, because the
    statements and evidence discussed by the officer were obtained without
    Woodruff being read his *Miranda* warning.

    **Issue Two** ..................................................................................................... 11
    The evidence presented at trial was insufficient to prove that Woodruff
    committed the acts for which he was charged and convicted.

Prayer .................................................................................................................... 14

Certificate of Service ............................................................................................. 15

Certificate of Compliance...................................................................................... 15

# INDEX OF AUTHORITIES

**CASES**

*Clayton v. State,*
235 S.W.3d 772 (Tex.Crim.App. 2007) ................................................................ 12

*Conner v. State,*
67 S.W.3d 192 (Tex.Crim.App. 2001) ................................................................ 12

*Creager v. State,*
952 S.W.2d 852 (Tex.Crim.App. 1997) ................................................................ 7

*Dickerson v. United States,*
530 U.S. 428 (2000) ................................................................ 7

*Guzman v. State,*
955 S.W.2d 85 (Tex.Crim.App. 1997) ................................................................ 6

*Gear v. State,*
340 S.W.3d 743 (Tex.Crim.App. 2011) ................................................................ 11

*Hooper v. State,*
214 S.W.3d 9 (Tex.Crim.App. 2007) ................................................................ 12

*Jackson v. Virginia,*
443 U.S. 307 (1979) ................................................................ 11, 12

*Miranda v. Arizona,*
384 U.S. 436 (1966) ................................................................ *passim*

*Missouri v. Seibert,*
542 U.S. 600 (2004) ................................................................ 7

*Roquemore v. State,*
60 S.W.3d 862 (Tex.Crim.App. 2001) ................................................................ 8, 9

**STATUTORY PROVISIONS**

Tex. Code Crim. P. art. 32.51 ................................................................ 13

## STATEMENT OF THE CASE

The entire record consists of the Clerk's Record (one volume), and the Reporter's Record of the trial (seven volumes). The Clerk's Record will be referenced as "C.R." with the page number following. The Reporter's Record will be referenced as "R.R." with the volume number preceding and the page number following.

On August 26, 2014, a jury convicted Curtis Woodruff of the offense of fraudulent use or possession of identifying information. 5 R.R. 29; C.R. 74, 82-84; *see* TEX. PEN. CODE ANN. § 32.51(c)(1). After pleading true to certain enhancements, the trial court assessed Woodruff's punishment at confinement in the Texas Department of Corrections for eighteen (18) years. 6 R.R. 12, 14-15; C.R. 82-84. Woodruff timely filed a Notice of Appeal on August 27, 2014. C.R. 76. On September 23, 2014, Woodruff filed a Motion for New Trial and Motion in Arrest of Judgment, both of which were denied by operation of law. C.R. 86-87.

# ISSUES PRESENTED

1.  The trial court erred in overruling Woodruff's objection to Officer Sims' testimony regarding Woodruff's questioning and arrest, because the statements and evidence discussed by the officer were obtained without Woodruff being read his *Miranda* warning.

2.  The evidence presented at trial was insufficient to prove that Woodruff committed the acts for which he was charged and convicted.

To the Honorable Seventh Court of Appeals:

## STATEMENT OF FACTS

Curtis Woodruff was indicted for possessing identifying information (a checkbook) of someone else, without that person's consent and with the intent to harm or defraud that person. See C.R. 7.

Early in the morning hours of October 1, 2013, Lubbock police officer Brad Sims was dispatched to a location in Lubbock, Texas, regarding a possible vehicle burglary in progress. 4 R.R. 16. Officer Sims drove to the area and located someone matching Dispatch's description of the suspect. 4 R.R. 17-19.

Curtis Woodruff, the person identified by Officer Sims, stopped, turned around, and complied with the officer's requests.[1] 4 R.R. 19-20. Woodruff placed his hands on the hood of the patrol car, and Officer Sims performed a pat-down search, because Woodruff was in the area of a possible vehicle burglary, matched the description of the alleged burglar, and had multiple items in his hands that might have concealed a weapon. 4 R.R. 21-22. During the pat-down, Officer Sims did not feel anything unusual that gave him cause to further investigate. 4 R.R. 22-23.

The officer asked Woodruff for consent to search his pockets, which Woodruff granted. 4 R.R. 23. Woodruff's pockets contained two debit cards with names on

---

[1] Although Officer Sims' patrol vehicle was equipped with recording equipment on the night in question, the recording was not available at trial, because Officer Sims failed to mark the recording as evidence. Consequently, the recording was purged from the storage system. 4 R.R. 20-21. Later in the encounter, at least two other officers arrived on scene with working recording equipment, but none of the recordings were maintained for trial. 4 R.R. 44.

---

them other than Woodruff. 4 R.R. 23. Woodruff's answers to questions about the card caused the officer to place Woodruff in handcuffs and detain him for additional investigation. 4 R.R. 25-26.

Woodruff gave consent for Officer Sims to search his bags after Woodruff was handcuffed and placed in the patrol car. 4 R.R. 26. The bag contained, among other items, a knife, a checkbook with the names of people other than Woodruff, and a Chase Bank envelope with $25.00 in cash inside the envelope. 4 R.R. 26-29, 36. The briefcase contained a portable grill. 4 R.R. 37.

After the extensive investigation and interrogation, Officer Sims read Woodruff his *Miranda* warning. 4 R.R. 37. According to Officer Sims, Woodruff waived his *Miranda* rights and chose to speak with the officer. 4 R.R. 37. Woodruff provided Officer Sims an explanation of how he came into possession of the items and denied having been in the area of the vehicle burglaries. 4 R.R. 37-38. The officer did not believe Woodruff's stories. 4 R.R. 38. After failing to locate the debit card and checkbook owners, Officer Sims placed Woodruff under arrest and transported him to jail. 4 R.R. 39-40.

Woodruff objected to the State entering into evidence the events and conversations that occurred prior to and after Officer Sims' reading Woodruff his *Miranda* rights. 3 R.R. 113-115. At a hearing on the matter, Officer Sims testified that he made contact with Woodruff because he matched the description from Dispatch of a person who had possibly burglarized vehicles. 3 R.R. 116, 119, 121. He provided

the timeline of his interrogation and arrest of Woodruff, as set forth above. 3 R.R. 122-130. The officer testified that he suspected a crime had occurred, and Woodruff was a suspect in the crime. 3 R.R. 125. But, a lengthy investigation occurred prior to Woodruff being read his *Miranda* rights. 3 R.R. 127.

Officer Sims acknowledged that when Woodruff was asked to place his hands on the patrol vehicle, at the very onset of the officer's interaction with Woodruff, Woodruff was not free to leave. 3 R.R. 135-136. In fact, Woodruff could have been charged with evading arrest or detention had he left the scene. 3 R.R. 135-136. This occurred prior to any search of Woodruff's person or his belongings and prior to any specific questions about the possible vehicle burglaries. 3 R.R. 136. Woodruff was not Mirandized at this point.

The investigation continued while Woodruff was searched and questioned about his possible involvement in the alleged burglaries, which may have taken thirty (30) minutes. 3 R.R. 136-143, 145. Officer Sims admitted that, before making contact with Woodruff, he advised Dispatch that he was with someone he believed was a suspect in the possible vehicle burglaries. 3 R.R. 143. The officer also disclosed that, to his knowledge, no eyewitnesses were able to say that Woodruff was the person who allegedly burglarized vehicles. 3 R.R. 147-148.

The trial court overruled Woodruff's objection to the admission of evidence and statements obtained before Officer Sims read Woodruff his *Miranda* rights. 3 R.R.

158. The trial court, however, sustained the objection as to any statements made by Woodruff after he was Mirandized. 3 R.R. 158.

Officer Sims testified in front of the jury as to the events set forth above, and at the close of the guilt/innocence portion of Woodruff's trial, the jury found Woodruff guilty of fraudulent use or possession of identifying information. 5 R.R. 29. After electing for the trial court to assess punishment, Woodruff pleaded true to certain enhancements, which increased his possible range of punishment. 6 R.R. 10-14. The trial court sentenced Woodruff to a term of eighteen (18) years in prison. 6 R.R. 14-15.

### SUMMARY OF THE ARGUMENT

Woodruff's Fifth Amendment rights were violated when he was questioned extensively by police about alleged vehicle burglaries before he was read his *Miranda* rights. The investigating officer testified that he located Woodruff due to his close proximity to the alleged burglaries and the fact that his description was consistent with the description he received from Dispatch. Prior to any interaction with Woodruff, the officer informed Dispatch that he was with a suspect in the alleged burglaries. The officer also testified that almost immediately after his initial interaction with Woodruff, Woodruff was no longer free to leave the scene. Woodruff was searched and questioned extensively about his possible involvement in the alleged burglaries, almost all of which occurred prior to being read his *Miranda* rights. Any testimony regarding statements and evidence obtained by the officer after Woodruff

was detained and had his freedom to leave deprived should have been suppressed by the trial court.

Without the testimony of Officer Sims regarding Woodruff, the evidence at trial was not sufficient to prove that Woodruff committed fraudulent use or possession of identifying information. Officer Sims testified that no witnesses were able to identify Woodruff as the person who allegedly burglarized vehicles.

## ARGUMENT

**Issue One:  The trial court erred in overruling Woodruff's objection to Officer Sims' testimony regarding Woodruff's questioning and arrest, because the statements and evidence discussed by the officer were obtained without Woodruff being read his *Miranda* warning.**

Woodruff's Fifth Amendment rights were violated when he was questioned extensively by police about alleged vehicle burglaries before he was read his *Miranda* rights. The investigating officer testified that he located Woodruff due to his location and the fact that his description was consistent with that of the suspect in the alleged burglaries. Prior to any interaction with Woodruff, the officer informed Dispatch that he was with a suspect in the alleged burglaries. The officer also testified that almost immediately after his initial interaction with Woodruff, Woodruff was no longer free to leave the scene. Woodruff was searched and questioned extensively about his possible involvement in the alleged burglaries, almost all of which occurred prior to being read his *Miranda* rights. Any testimony regarding statements and evidence

obtained by the officer after Woodruff was not free to leave should have been suppressed.

**Argument and Authorities**

In reviewing a trial court's ruling on a *Miranda* violation claim, an appellate court conducts a bifurcated review: it affords almost total deference to the trial court's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor, and it reviews *de novo* the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor. *Ripkowski v. State*, 61 S.W.3d 378, 381-382 (Tex.Crim.App. 2001) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).

In *Miranda v. Arizona*, the Supreme Court held that

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. . .

*Miranda*, 384 U.S. 436, 444-445 (1966). The requirements of warning and waiver of rights set forth in *Miranda* serve to protect the Fifth Amendment right against

compelled self-incrimination. *Dickerson v. United States*, 530 U.S. 428, 440 n. 4 (2000); *see Miranda*, at 384 U.S. 436.

In *Missouri v. Seibert*, a plurality of the United States Supreme Court stated that "the threshold issue when interrogators question first and warn later is thus whether it would be reasonable to find that in these circumstances the warnings could function "effectively" as *Miranda* requires." *Missouri v. Seibert*, 542 U.S. 600, 611-12 (2004). As such, the Court noted certain relevant facts that bear on whether Miranda warnings delivered midstream could be effective enough to accomplish their object: the completeness and detail of the questions and answers in the first round of interrogation; the overlapping content of the two statements; the timing and setting of the first and the second; the continuity of police personnel; and the degree to which the interrogator's questions treated the second round as continuous with the first." *Id.* at 615-616.

The Texas Court of Criminal Appeals has long held that the State bears the burden of proving admissibility when a *Miranda* violation is found. *See, e.g., Creager v. State*, 952 S.W.2d 852, 860 (Tex.Crim.App. 1997).

<u>Woodruff was in a custodial interrogation when he was questioned.</u>

The requirement that police advise a person of rights prior to interrogation applies if the person is "in custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, at 445. A custodial interrogation occurs when a defendant is in custody and is exposed to any words or actions on the part of the

police that the police should know are reasonably likely to elicit an incriminating response. *Roquemore v. State*, 60 S.W.3d 862, 868 (Tex.Crim.App. 2001).

When the officer first confronted Woodruff on the side of the street, he told Woodruff to put all his belongings on the ground and place his hands on the patrol vehicle. At this point, Officer Sims expressly acknowledged that Woodruff was not free to leave. In fact, the officer testified that Woodruff could have been charged with evading arrest or detention if he had left the scene at that time.

Based upon Officer Sims' testimony, Woodruff was in a custodial interrogation as defined by *Miranda*. Woodruff was deprived of his freedom of action in a very significant way – he was not free to leave when he was ordered to place his hands on the patrol vehicle. This level of deprivation only increased over the course of the interrogation, as Woodruff was later arrested, placed in the patrol car, and then formally arrested and taken to jail.

Woodruff's questioning was initiated by law enforcement.

Officer Sims determined that Woodruff was a suspect before making contact with him, due to his physical appearance and close proximity to the alleged burglaries. Woodruff's questioning was initiated by law enforcement – he was confronted by Officer Sims while walking along the street. He did not voluntarily meet with the officer.

<u>Woodruff was exposed to words on the part of Officer Sims that the officer should have known were reasonably likely to elicit an incriminating response from Woodruff.</u>

As set forth above, a custodial interrogation occurs when a defendant is in custody and is exposed to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response. *Roquemore,* 60 S.W.3d at 868.

Officer Sims did not randomly stop Woodruff on the side of the street – he did so because Woodruff matched the description of the alleged vehicle burglar and was in close proximity to the location of the burglaries. When Officer Sims searched Woodruff's pockets and located the debit cards with identifying information from someone else, the officer should have known that any questions about the cards were reasonably likely to elicit incriminating responses from Woodruff. Yet, Officer Sims questioned Woodruff about the debit cards without Mirandizing him.

Woodruff's responses to the officer's questions caused him to place Woodruff in handcuffs and detain him in the back seat of the patrol vehicle. His freedom was deprived in the most literal manner, yet Officer Sims continued to interrogate Woodruff without Mirandizing him. The officer searched Woodruff's bag and briefcase and only then decided to provide Woodruff with a *Miranda* warning.

The checkbook upon which Woodruff's indictment was based was not located by Officer Sims until well after Woodruff should have been read his *Miranda* rights.

From the time Woodruff placed his hands on the patrol vehicle, he was in a custodial interrogation, and he should have been read his *Miranda* rights. Prior to Woodruff being Mirandized, Officer Sims obtained all the evidence and almost all the statements used to prosecute Woodruff at trial. As such, the trial court erred in overruling Woodruff's objection to Officer Sims' testimony about the statements and evidence obtained prior to Woodruff being Mirandized.

Conclusion

Because Woodruff was deprived of his freedom in a significant way during the entirety of Officer Sims' investigation, any statements or evidence obtained during that interrogation should have been suppressed, because Woodruff was not read his *Miranda* rights. Officer Sims knew that the answers to the questions he asked would likely incriminate Woodruff in the alleged vehicle burglaries, yet he continued with the interrogation without notifying Woodruff of his constitutional rights. Once he did notify Woodruff of his *Miranda rights*, the evidence and statements were obtained as a result of the improper pre-*Miranda* interrogation.

Moreover, the Miranda warnings delivered midstream were not effective enough to accomplish their object, as set forth in *Seibert*. Specifically, the officer questioned first and obtained all the necessary statements and evidence needed for Woodruff's prosecution before Mirandizing Woodruff. The entire interrogation took place in one setting, but the warning was not delivered until the necessary evidence

was obtained. All statements and evidence obtained after Woodruff was ordered to place his hands on the patrol car should have been suppressed.

The trial court's failure to sustain Woodruff's objection violated Woodruff's federal and state constitutional rights and Texas statutory rights. This Court should reverse the trial court's judgment and remand this case for a new trial in which the State cannot adduce improperly-obtained evidence and statements to prosecute Woodruff.

**Issue Two: The evidence presented at trial was insufficient to prove that Woodruff committed the acts for which he was charged and convicted.**

Without the testimony of Officer Sims regarding Woodruff, which should have been suppressed, the evidence at trial was not sufficient to prove that Woodruff committed fraudulent use or possession of identifying information. Officer Sims testified that no witnesses were able to identify Woodruff as the person who allegedly burglarized vehicles.

**Argument and Authorities**

In reviewing a challenge to the sufficiency of evidence, an appellate court examines all the evidence in the light most favorable to the verdict and determines whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); *Gear v. State*, 340 S.W.3d 743, 746 (Tex.Crim.App.2011). This standard accounts for the factfinder's duty "to resolve conflicts in the testimony, to weigh the

evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, at 319. Therefore, in analyzing legal sufficiency, an appellate court must "determine whether the necessary inferences are reasonable based upon the cumulative force of all the evidence when viewed in light most favorable to the verdict." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex.Crim.App. 2007). This review of "all of the evidence" includes evidence that was properly and improperly admitted. *Clayton,* at 778 (citing *Conner v. State*, 67 S.W.3d 192, 197 (Tex.Crim.App. 2001). Evidence is insufficient to support a conviction in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 n. 11.

Without Officer Sims' testimony regarding Woodruff, the record contains no evidence to establish that Woodruff committed the offense for which he was charged.

The evidence is legally insufficient to support Woodruff's conviction. The jury had to find that Woodruff fraudulently used or possessed identifying information of someone else, without consent and with the intent to harm or defraud that person. However, without the testimony of Officer Sims that should have been suppressed, as set forth in Issue One, the record contains no evidence to show that Woodruff fraudulently used or possessed identifying information as set forth in Woodruff's indictment.

Pursuant to the Texas Penal Code, in relevant part, a person commits the offense of fraudulent use or possession of identifying information if he, with the intent to harm or defraud another, obtains, possesses, transfers, or uses an item of . . . identifying information of another person without the other person's consent . . ." *See* TEX. PEN. CODE § 32.51.

All evidence tending to show that Woodruff fraudulently used or possessed identifying information of someone else was obtained while Woodruff was subjected to a custodial interrogation without having been read a *Miranda* warning. *See* Issue One. As such, the evidence offered by the State to prove Woodruff's guilt was improperly admitted. Additionally, Officer Sims testified that no eyewitnesses to the alleged vehicle burglaries were able to identify Woodruff as the person who allegedly burglarized vehicles.

Without Officer Sims' improperly admitted evidence, and without any eyewitnesses to testify regarding Woodruff, the State failed to meet its burden to prove beyond a reasonable doubt that Woodruff fraudulently used or possessed the identifying information indicated in the indictment, one of the elements of the crime for which he was charged and convicted by the jury.

Conclusion

Because the only evidence admitted to show Woodruff's guilt was improperly admitted, the State failed to produce sufficient evidence to prove beyond a reasonable

doubt that Woodruff committed the offense for which he was charged. Therefore, this Court should reverse Woodruff's conviction and render a judgment of acquittal.

## PRAYER

Appellant Curtis Woodruff asks this Court to: (1) reverse the trial court's decision to admit statements and evidence obtained by the State as a result of a *Miranda* violation, and (2) render a judgment of acquittal for Woodruff, because the State failed to produce sufficient evidence to prove that Woodruff was guilty of the offense beyond a reasonable doubt. Woodruff further requests that this Court grant any such other and further relief to which Woodruff may show himself justly entitled.

Respectfully submitted,


   /s/ Julie Goen Panger
Julie Goen Panger
Attorney for Appellant
The Kiechler Law Firm, PLLC
619 Broadway Street
Lubbock, Texas  79401
Telephone (806) 712-2889
Facsimile (806) 712-2529
Email: julie@thelubbocklawyer.com
State Bar Number 24069793

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon the following parties by electronic service on June 19, 2015:

> JEFF FORD
> Lubbock County District Attorney's Office
> Appellate Division, Chief
> 904 Broadway
> P.O. Box 10536
> Lubbock, Texas 79408
> Counsel for Appellee
> jford@co.lubbock.tx.us


>  /s/ Julie Goen Panger
> Julie Goen Panger


## CERTIFICATE OF COMPLIANCE

In accordance with Texas Rule of Appellate Procedure 9.4(i), the undersigned attorney of record certifies that the Brief of Appellant contains 3,263 words, excluding those words identified as not being counted in TEX. R. APP. P. 9.4(i)(1), and was prepared on Microsoft Word 2013®.


>  /s/ Julie Goen Panger
> Julie Goen Panger