

# NUMBERS 13-20-00101-CR & 13-20-00102-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellant,** |
| **v.** | |
| **SEBASTIAN TORRES,** | **Appellee.** |

## On appeal from the 398th District Court
## of Hidalgo County, Texas.

# OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Silva
Opinion by Chief Justice Contreras**

Appellee Sebastian Torres was charged by indictment with murder, a first-degree felony (Count I); tampering with a human corpse, a second-degree felony (Count II); and tampering with physical evidence, a third-degree felony (Count III).[1] *See* TEX. PENAL CODE

---

[1] Counts I and II were originally filed in the 229th District Court of Starr County but were later

ANN. §§ 19.02(b)(1), 37.09(c), (d)(1). The trial court granted appellee's motion to suppress a recorded oral statement he made to police on grounds that it did not comply with § 51.095 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 51.095. Appellant, the State of Texas, argues by three issues that the trial court erred. We affirm.

## I. BACKGROUND

On August 11, 2017, Starr County Sheriff's Office deputies arrested appellee, born in 2001, as part of their investigation into the disappearance of 17-year-old Chayse Olivarez. According to a form signed by Justice of the Peace Jesus Barrera Jr., appellee was given statutory *Miranda* warnings at 8:13 p.m. at the sheriff's office, but appellee initially refused to make a statement, and he was taken to the Starr County Juvenile Center. Later, appellee was brought back to the sheriff's office, and Barrera once again administered the statutory *Miranda* warnings to appellee at 12:23 a.m. the following day. This time, appellee signed his name next to the following statement on the statutory warning form: "I acknowledge that I was given the above warning and I understand my rights as explained to me in the warning. I WAIVE these rights and agree to be interviewed by law enforcement officers."

Both warning forms signed by Barrera contain a check next to the following statement: "OPTIONAL DIRECTIVE: APPLICABLE ONLY TO RECORDED STATEMENTS: Pursuant to Section 51.095(f), Family Code, I am requesting that the officer return you and the recording of your statement to me at the conclusion of the

transferred to 398th District Court of Hidalgo County, trial court cause number CR-1776-10-I. These counts are addressed in appellate cause number 13-20-00101-CR.

Count III was filed in trial court cause number CR-1789-19-I; this count is addressed in appellate cause number 13-20-00102-CR.

2

process of questioning so that I can determine whether it was given voluntarily."

Having obtained a written waiver of appellee's rights, police proceeded to interview appellee at the sheriff's office. Police then took appellee to walk through the suspected crime scene and continued the interview there. Both parts of the interview were recorded by Investigator Dario Marquez's bodycam. According to the State, during the interview, appellee revealed the location of Olivarez's dead body, the condition the body would be found in, and in what container the body would be found.[2] However, after the interview concluded, Barrera did not meet with appellee or review his recorded statement to determine whether it was made voluntarily.

Appellee moved to suppress his recorded statement. At a hearing on November 22, 2019, Barrera testified that he left the sheriff's office after signing the first warning form on August 11, 2017, then returned to the sheriff's office at the request of an assistant district attorney at around 11:50 p.m. When asked whether appellee agreed to give a statement to police upon signing the second warning form, Barrera said: "[Appellee] signed that he would give a statement [sic]." The prosecutor then asked Barrera: "Did you ask that [appellee] be brought back to you after he had provided that statement?" Barrera replied: "No, sir." Barrera explained that he is normally "in the room" or watching a live video feed when police interrogate a juvenile, but in this case, he "was going to see a video later." Barrera stated that he stayed at the sheriff's office until 4:00 a.m. the next morning. When asked why he stayed, Barrera testified: "I don't remember, sir. I'm thinking

---

[2] Marquez's interview of appellee was conducted mainly in Spanish, and the State attached an unverified translated transcript of the interview to its trial court brief in opposition to the motion to suppress. The State does not direct this Court to any particular point in the video or the 259-page transcript in which appellee provided the information described above. Nevertheless, appellee does not dispute that his recorded statement to police included this information.

maybe they asked me to stay behind if they needed something from the magistrate or to, like, review the video, which it wasn't prepared until later." Barrera said he "ran into [appellee] in the hall" of the sheriff's office when he left at around 4:00 a.m., and appellee was handcuffed at the time. However, Barrera testified he never reviewed the video recording of appellee's encounter with police, and he never determined that appellee's statement to police was voluntary.

On cross-examination, Barrera acknowledged that he checked the "Optional Directive" box on both warning forms and that he read its contents aloud to appellee at the beginning of the recorded interview. Defense counsel asked Barrera "if you invoke that, then you're obligated to bring him back, aren't you?" Barrera replied, "I don't remember that, sir." He conceded that the reason he waited at the sheriff's office until 4:00 a.m. was "to be called to—to go over it."

Marquez testified that he conducted the interview with appellee in two parts, at the sheriff's office and then at the alleged crime scene. Two recordings, denoted as State's Exhibits 3 and 4, were entered into evidence.

In both cause numbers, the trial court granted the motion to suppress and later entered the following findings of fact and conclusions of law:

| | |
|---|---|
| Fact 1: | On August 11, 2017 at approximately 8:00 or 8:30 PM, the Defendant, Sebastian Torres, was arrested. Mr. Torres was 16 years old at the time of his arrest. |
| Conclusion 1: | Under the law, Sebastian Torres was a juvenile. Sec[tion] 51.02(2), Texas Family Code. |
| Fact 2: | Sebastian Torres was brought before a magistrate and was admonished. He refused to give any statements. Then, he was detained in the Starr County juvenile detention facility. |
| Fact 3: | Approximately three and a half to four hours later, the |

4

magistrate was called by an officer stating that the juvenile wanted to communicate and cooperate. The magistrate was called upon to give him the warnings for the second time.

Fact 4:    Sebastian Torres was in custody at all times when interrogated.

Fact 5:    After the second visit with the magistrate, Sebastian Torres was interrogated twice, once in a room and once at an alleged crime scene.

Fact 6:    The two interrogations were videotaped. One interrogation video was dated August 12, 2017, 12:26 A.M. The other was dated August 12, 2017, 4:19 A.M.

Fact 7:    In both instances when Sebastian Torres was brought before the magistrate, the magistrate used a form to make a record of the event.

Fact 8:    In both instances, the magistrate requested in writing that law enforcement officers bring Sebastian Torres back to him at the conclusion of the process of questioning so that he could determine whether Sebastian Torres voluntarily participated. This request was in accordance with [§] 51.095(f), Texas Family Code.

Conclusion 2:    The admissibility of a statement made by a juvenile is governed by [§] 51.095, Texas Family Code. [*Meadoux v. State*, 307 S.W.3d 401 (Tex. App.—San Antonio 2009), *aff'd*, 325 S.W.3d 189 (Tex. Crim. App. 2010)].

Conclusion 3:    Section 51.095(f), Texas Family Code gives the magistrate discretion. But if the magistrate requests that the child be returned to him after questioning and this is not done, the child's statement is not admissible. Section 51.095(f), Texas Family Code.

Conclusion 4:    In reviewing [§] 51.095(f), Texas Family Code and applicable case law, there must be strict compliance when conducting a custodial interrogation of a juvenile. [*In re B.B.*, 567 S.W.3d 786, 790 (Tex. App.—San Antonio 2018, no pet.) (citing *Roquemore v. State*, 60 S.W.3d 862, 868 (Tex. Crim. App. 2001); *Ray v. State*, 176 S.W.3d 544, 548 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd); *In re J.M.S.*, No. 06-04-00008-CV, 2004 WL 1968644, at *3 (Tex. App.—Texarkana Sept.

5

8, 2004, no pet.) (mem. op.); *In re J.B.J.*, 86 S.W.3d 810, 815 (Tex. App.—Beaumont 2002, no pet.))].

Fact 9: After interrogating Sebastian Torres twice and video recording the interrogations, law enforcement officers did not ever bring him back to the magistrate along with the video recordings, despite the fact that the magistrate had requested in writing that this be done. The magistrate never made a finding that Sebastian Torres participated in the custodial interrogations voluntarily.

Conclusion: 4 [sic] The magistrate invoked but the law enforcement officers did not comply with the plain language of [§] 51.095(f), Texas Family Code.

Since the State did not comply with [§] 51.095(f) of the Texas Family Code when it took the two statements in question from Sebastian Torres, a juvenile, both statements became inadmissible under the statute and at this time will be suppressed for this trial.

These appeals followed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (permitting the State to appeal an order granting a motion to suppress evidence in a criminal case).

## II. DISCUSSION

The State lists the following three issues in its appellate briefs:

1. Whether the State of Texas complied with [§] 51.095 of the Texas Family Code and properly warned Sebastian Torres of his Miranda rights and if Sebastian Torres was properly warned did he knowingly and voluntarily waive those rights.

2. Whether the follow up procedure of a juvenile's oral custodial recorded statement regarding voluntariness set out in [§] 51.095(f) of the Texas Family Code is mandatory or discretionary.

3. Whether a juvenile's statement is admissible notwithstanding any of the provisions of [§] 51.09 if the juvenile's statement contains facts and/or circumstances that are found to be true.

We address the issues together.

6

**A.    Standard of Review**

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion under a bifurcated standard. *Wells v. State*, 611 S.W.3d 396, 405 (Tex. Crim. App. 2020). When the trial court makes express findings of fact in a suppression hearing, we afford almost total deference to those findings as long as they are supported by the record. *State v. Granville*, 423 S.W.3d 399, 404 (Tex. Crim. App. 2014). The same standard is applied when reviewing the trial judge's application of law to questions of fact when resolution of those questions depends on an assessment of credibility and demeanor. *Wells*, 611 S.W.3d at 405; *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). On the other hand, mixed questions of law and fact which do not hinge on assessments of credibility or demeanor are reviewed de novo. *Wells*, 611 S.W.3d at 405–06. Pure questions of law, such as statutory interpretation, are also reviewed de novo. *Tha Dang Nguyen v. State*, 359 S.W.3d 636, 641 (Tex. Crim. App. 2012). We will sustain the trial court's ruling if it is correct under any applicable theory of law. *Wells*, 611 S.W.3d at 405–06.

**B.    Applicable Law**

Because appellee was a juvenile at the time of his arrest, the Juvenile Justice Code, codified in Title 3 of the Texas Family Code, governs his substantive rights. *See Comer v. State*, 776 S.W.2d 191, 196 (Tex. Crim. App. 1989) (holding that issues involving the substantive rights of pre-transfer juveniles are governed by the family code). This includes § 51.09, which provides that a child between the ages of ten and seventeen may waive any constitutional or statutory right if:

(1)    the waiver is made by the child and the attorney for the child;

(2)    the child and the attorney waiving the right are informed of and

7

understand the right and the possible consequences of waiving it;

(3)     the waiver is voluntary; and

(4)     the waiver is made in writing or in court proceedings that are recorded.

TEX. FAM. CODE ANN. § 51.09. Section 51.095 further provides, in relevant part, as follows:

(a)     Notwithstanding Section 51.09, the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:

. . . .

(2)     the statement is made orally and the child makes a statement of facts or circumstances that are found to be true and tend to establish the child's guilt, such as the finding of secreted or stolen property, or the instrument with which the child states the offense was committed;

. . . or

(5)     subject to Subsection (f), the statement is made orally under a circumstance described by Subsection (d) and the statement is recorded by an electronic recording device, including a device that records images, and:

(A)     before making the statement, the child is given the warning described by Subdivision (1)(A)[3] by a magistrate, the warning is a part of the recording, and the child knowingly, intelligently, and voluntarily waives each right stated in the warning;

---

[3] Section 51.095(a)(1)(A) states that, for a written statement of a child to be admissible, the statement must show that a magistrate has given the child the following warnings before the statement was made:

(i)     the child may remain silent and not make any statement at all and that any statement that the child makes may be used in evidence against the child;

(ii)    the child has the right to have an attorney present to advise the child either prior to any questioning or during the questioning;

(iii)   if the child is unable to employ an attorney, the child has the right to have an attorney appointed to counsel with the child before or during any interviews with peace officers or attorneys representing the state; and

(iv)    the child has the right to terminate the interview at any time[.]

TEX. FAM. CODE ANN. § 51.095(a)(1)(A).

(B)     the recording device is capable of making an accurate recording, the operator of the device is competent to use the device, the recording is accurate, and the recording has not been altered;

(C)     each voice on the recording is identified; and

(D)     not later than the 20th day before the date of the proceeding, the attorney representing the child is given a complete and accurate copy of each recording of the child made under this subdivision.

. . . .

(d)     Subsections (a)(1) and (a)(5) apply to the statement of a child made:

(1)     while the child is in a detention facility or other place of confinement; [or]

(2)     while the child is in the custody of an officer[.]

. . . .

(f)     A magistrate who provides the warnings required by Subsection (a)(5) for a recorded statement may at the time the warnings are provided request by speaking on the recording that the officer return the child and the recording to the magistrate at the conclusion of the process of questioning. **The magistrate may then view the recording with the child or have the child view the recording to enable the magistrate to determine whether the child's statements were given voluntarily.** The magistrate's determination of voluntariness shall be reduced to writing and signed and dated by the magistrate. **If a magistrate uses the procedure described by this subsection, a child's statement is not admissible unless the magistrate determines that the statement was given voluntarily.**

*Id.* § 51.095 (emphasis added).

## C.    Analysis

The underlying facts relevant to the motion to suppress are largely undisputed. In particular, there is no dispute that the oral statements of appellee captured on Marquez's bodycam video were made while appellee was "in the custody of an officer." *See id.* § 51.095(d)(2). Further, there is no dispute that the requirements of § 51.095(a)(5) have

9

been satisfied with respect to the video recording, including the requirement that appellee be administered statutory *Miranda*-type warnings prior to making the statements and that the warnings be made part of the recording. *See id.* § 51.095(a)(5). And it is undisputed that, although Barrera asked for appellee to be returned to him so that appellee's oral statements could be reviewed for voluntariness, appellee was not returned to him, Barrera never reviewed the statements, and Barrera never made a determination that they were given voluntarily. *See id.* § 51.095(f).

As noted, § 51.095(f) provides that a child's oral statement is inadmissible "[i]f a magistrate uses the procedure described by" that subsection but the magistrate does not "determine that the statement was given voluntarily." *Id.* Thus, the sole question presented in these appeals is: Did Barrera "use[] the procedure described by" § 51.095(f)? If so, the trial court properly granted the motion to suppress.

The parties do not cite any cases examining whether the § 51.095(f) "procedure" has been "used" in any particular factual scenario, and we find none. In general, when a statute's language is clear and unambiguous, we will give effect to its plain meaning unless that interpretation would lead to absurd consequences that the legislature could not have intended. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Particularly with respect to the juvenile justice provisions in Title 3 of the family code, the Texas Court of Criminal Appeals has "established a policy of strict compliance." *Roquemore*, 60 S.W.3d at 870.

According to its plain meaning, § 51.095(f) applies whenever a magistrate "provides the warnings required by Subsection (a)(5) for a recorded statement" by a child. TEX. FAM. CODE ANN. § 51.095(f). In such a situation, the magistrate is given discretion to

10

do two things: First, it "may . . . request by speaking on the recording that the officer return the child and the recording to the magistrate at the conclusion of the process of questioning." *Id.* Second, if the magistrate decides to make such a request, the magistrate "may then view the recording with the child or have the child view the recording" to determine whether the statements were given voluntarily. *Id.*

Here, it is undisputed that Barrera made the spoken request on the recording, as contemplated in the first part of § 51.095(f). To make his intentions absolutely clear, Barrera also twice checked the box on the waiver form indicating that he wished to have appellee and the recording returned to him so that he could evaluate the voluntariness of appellee's statements.[4] Barrera then waited at the sheriff's office for several hours overnight so that he could complete this procedure. Barrera did not ultimately "view the recording with the child or have the child view the recording," as contemplated in the second part of the statute, but nothing in the record indicates that Barrera ever withdrew his decision to invoke the statutory procedure. Under these circumstances, we conclude that Barrera "use[d] the procedure described in" § 51.095(f); therefore, the fact that he did not make a determination of voluntariness rendered the subject statements inadmissible.

The State emphasizes in its second issue that, unlike the part of the statute pertaining to written statements by a child, the rules for oral statements do not *always* require a magistrate to review the statement for voluntariness before the statement will be admitted. *Compare id.* § 51.095(a)(1)(B)(ii), (D) (providing that a child's written statement is admissible only if the magistrate: (1) "signs a written statement verifying" that

_____

[4] As noted, at the suppression hearing, Barrera initially denied that he asked for appellee to be brought back to him so that appellee's statement could be reviewed for voluntariness. However, Barrera admitted that he checked the "Optional Directive" box, which explicitly contained that request. We therefore defer to the trial court's finding that Barrera "invoked" the § 51.095(f) procedure.

11

"the child understands the nature and contents of the statement and that the child is signing the same voluntarily"; and (2) "certifies that the magistrate has . . . determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived" the rights set forth in the warnings) *with id.* § 51.095(f) ("The magistrate *may* then view the recording with the child or have the child view the recording to enable the magistrate to determine whether the child's statements were given voluntarily." (Emphasis added)). It is true that the magistrate does have the initial discretion to decide whether to follow the procedure set forth in § 51.095(f). However, once the magistrate decides to follow the procedure, the statute explicitly makes admissibility conditional on the magistrate's finding of voluntariness.

By its third issue, the State contends that, even if Barrera "used the procedure described" in § 51.095(f), appellee's statements should still have been admitted pursuant to subsection (a)(2) of § 51.095. *See id.* § 51.095(a)(2) (stating that a child's oral statement is admissible if it is a "statement of facts or circumstances that are found to be true and tend to establish the child's guilt").[5] We disagree. As noted, the plain language of § 51.095(f) requires the magistrate to find voluntariness as a precondition to admissibility whenever the procedure set forth in that subsection is "use[d]," without regard to whether the statement may be otherwise admissible under some other subsection. *See id.* § 51.095(f). In any event, there was no testimony adduced at the suppression hearing from which the trial court could have determined that appellee's recorded statements were "found to be true." Although Marquez testified that he

---

[5] Appellee argues that § 51.095(a)(2) "only applies when the oral statement is a statement that is not the product of custodial interrogation." We assume but do not decide, for purposes of this opinion, that § 51.095(a)(2) may theoretically apply to statements made during a custodial interrogation.

12

interviewed appellee, he did not testify as to the content of appellee's statements, nor did he testify that appellee's statements were found to be true. The State does not direct us to any specific evidence from which the trial court could have inferred that the § 51.095(a)(2) exception applied.[6]

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in granting appellee's motion to suppress. We overrule the State's issues.

### III. CONCLUSION

The Texas Legislature enacted the Juvenile Justice Code "to provide for the protection of the public and public safety" and "to provide a simple judicial procedure through which . . . the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced." *Id.* § 51.01(1), (6). To achieve this goal, § 51.095(f) allows a magistrate to demand the ability to review a juvenile's statement to determine whether it was given voluntarily—but if the magistrate does so, the statement is inadmissible if the magistrate does not affirmatively find that the statement was voluntary. Although there is nothing in the record of this case indicating appellee's statement was not voluntary, we must strictly construe the statute, *see Roquemore*, 60 S.W.3d at 870, and we are thereby compelled to conclude that the statement is inadmissible. We note that this could lead to an unjust result, in that an incriminating statement which is voluntarily made—and thus passes constitutional muster—may nevertheless be excluded due only to the magistrate's invocation of the specific procedure set forth in the statute. Such a result, while required by the statute's language, would not advance the purposes

---

[6] At oral argument, the State's counsel conceded that there was no testimony at the suppression hearing explicitly providing that appellee's statements during his interview were found to be true.

13

of the statute. *See* TEX. FAM. CODE ANN. § 51.01(1), (6). We urge the Legislature to amend the statute to reflect that a statement will be admissible if it is adjudged at any point to be voluntarily made, regardless of whether the magistrate chose to invoke the procedure set forth in § 51.095(f).

The trial court's judgments are affirmed.

DORI CONTRERAS
Chief Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
21st day of December, 2021.